## BARTLETT and others *v.* SMITH.

*(Circuit Court, D. Minnesota.* July, 1882.)

1. SALE AND DELIVERY—TIME CONTRACTS.

The purchase or sale of wheat to be delivered at a future time is a fair contract if the intention of the contracting parties is to deliver the wheat, although it is not in their possession at the time of the contract of sale; but if the intention is not to deliver, but to settle differences between the contract price and the then market price, the transaction is illegal and void.

2. SAME—RIGHT TO RECOVER ADVANCES.

Where parties knowingly furnish means for an illegal transaction, and make advances in the settlement of losses under illegal contracts, the court will not aid them to recover moneys thus paid out; but if parties acting as brokers in the sale and purchase of wheat, without disclosing the name of their principal, enter into *bona fide* contracts for the actual sale and delivery of wheat with third parties for defendant's account, and at his request settled the losses, and paid the amount due under the contracts, they are entitled to recover the moneys thus paid out.

3. SAME—SALE OF PROPERTY NOT ON HAND.

It is not necessary, in case of a sale or purchase of property for future delivery, that the property should actually be on hand at the time.

4. CONTRACT—MUTUALITY OF INTENT.

A contract which is valid in law cannot be rendered illegal by the mere intention of one of the parties to the contract to do something which, if mutually intended, would render it invalid.

5. PRINCIPAL AND AGENT—ADVANCES BY AGENT—RECOVERY OF.

If a principal employs an agent to transact a legitimate business for him, and in conducting such business the agent is authorized to advance money on his principal's account, the law protects the agent, and he may recover the money so advanced if the transactions are legitimate.

*C. K. Davis,* for plaintiff.

*Gordon E. Cole,* for defendant.

When the plaintiff's testimony was closed the defendant moved the court to instruct the jury to find a verdict for the defendant. After the argument and submission of this motion the court,—his honor, Judge NELSON, presiding,—in deciding the same, said:.

NELSON, D. J.   I decline to take this case from the jury.   I think there is an underlying question of fact here which they must determine, and that is, were the contracts legitimately entered into? were they contracts for the actual delivery of wheat? or were they mere subterfuges, and entered into on the part of the plaintiffs and third parties for the purpose of promoting gambling transactions?   That is an underlying question of fact which it seems to me the jury must determine, and I cannot say, in examining this rule, that although these contracts were made subject to this rule 9—and, perhaps, rule 10—of the chamber of commerce, they upon their face are gambling contracts.   It is not an unusual thing, where parties enter into contracts for the delivery of personal property at a future time, to put up earnest money for the fulfillment and performance of those contracts.   Under these rules, what is called a "margin" is required for the faithful performance of the contract that is entered into.   It may be that parties under these rules—members of that chamber of commerce—may engage in illegitimate trade, but I cannot, from reading the rules, construe them (taking them together) to intend that all contracts which are entered into by the members of that chamber are gambling transactions.

Now, the proviso to section 5, which was read by the counsel here, is one under which gambling contracts might be entered into, but it does not necessarily follow that when a contract like this in evidence is entered into by a member of that chamber, although providing that it is subject to the rules and regulations of the chamber of commerce, there shall be no actual delivery of wheat.

If it was the intention of the parties to the contract that there should be a delivery of wheat, although subject to the rules and regulations of the chamber of commerce, it is not an illegal contract.

It is a fair question for the jury to say, and it is for them to determine, in the light of all the evidence here as to the usages of the members of that chamber of commere, as to the facts and the circumstances attending these transactions and the conduct of the parties, whether they were actual contracts for the delivery of wheat, or whether they were mere subterfuges entered into to enable the parties to engage in speculation in margins.

In that view, I propose to leave (under proper instructions) the whole question for them to determine, whether there was a fair contract for the delivery of actual wheat, or whether it was a speculation on margins. Now, the first part of this section 5, of rule 9, provides that—

"Any party who shall contract to buy or sell property, and who shall fail to respond within the next one and one-half banking hours, after having been called on for security, [margins, in case the property rises or falls,] as hereinbefore provided, shall be judged to have defaulted on his contract; and in case of such default, the party who has called for such security shall have the right to buy or sell (as the case may be) the property named in said contract, in the quantity and for the time of delivery specified in said contract, and all differences between the contract price and the price at which the property may have been or sold bought, (as the case may be) in consequence of such default, shall constitute the rule and measure of damages against the party in default; provided, that in case the party calling for security shall elect not to buy or sell the property, as hereinbefore provided, he may have the right, by giving notice to the delinquent, (as provided in section 6 of this rule,) to consider the contract then terminated at the market price of the property named for the delivery specified in the contract. And the party so terminating the contract may forthwith proceed against the party so defaulting for the collection or enforcing payment of all damages sustained by reason of such default; and the rule and measure of such damages shall be the difference between the contract price and the market price (at the time of giving such notice) of the property named for the delivery specified in the contract."

These contracts are entered into for the purchase or sale of a certain amount of wheat, at seller's option for future delivery.

Now, suppose A. has sold B. 5,000 bushels of wheat to be delivered in August, seller's option at one dollar; the wheat falls off five cents, and B. calls for further security, (under these rules and regulations,) which is not put up by A. Now, under this rule, A. having failed to put up this further security has defaulted. Now, then, B. can go into the market and buy 5,000 bushels of wheat at the market price, (that is, it must be an actual purchase,) and in case he brings suit against A., what is the measure of damages? It would be the difference between the price which he paid when he went into the market, and the contract price. That is the legal rule of damages.

Where the earnest money is put up in that way, and the parties agree that in case of a rise or fall in the market they may call for further security, and if that security has not been put up, the party may go into the market and buy 5,000 bushels of wheat, (in this instance, say,) he can recover the difference between the contract

price and the price that he paid in the market for the wheat. It may be this is all sham. It may be these parties have entered into contracts of this character, and instead of going into the market, have merely drawn up between third parties and themselves contracts, which upon their face purport to be the purchase and sale of wheat, when it was never intended that there should be an actual delivery of wheat at all. If this is so, then it is a gambling transaction. The law never upholds gambling transactions in any instance, and particularly is a gambling transaction in wheat pernicious and it cannot be sustained.

Parties who speculate in the bread-stuffs of the country, demoralize not only the trade, but injure the producers themselves. When the case arises, and the party seeks to enforce a gambling transaction, the court will say: "We will not aid you to enforce it." If there be any loss in the transaction, the party who loses cannot recover.

I shall leave it to the jury, gentlemen, to determine whether there has been, in the first instance, any actual sale and delivery of wheat. The other instructions they will receive as I come to deliver my charge.

After all of the testimony was in, and argument by counsel—

Nelson, D. J., (charging jury.) You have listened to very elaborate arguments of the facts by counsel. If I can give you the law of the case, so you will understand it, I think you will have little difficulty in coming to a conclusion.

The plaintiffs bring this suit against the defendant to recover for services and alleged advances made on the defendant's account in the sale and purchase of wheat for future delivery during the years of 1879, 1880, and 1881.

The plaintiffs are commission merchants and brokers. They are citizens of the state of Wisconsin, and reside in the city of Milwaukee, and the defendant is a citizen of the state of Minnesota. The amount claimed is about $13,000. The defendant is a wheat dealer, miller, and warehouseman, and during these years authorized the plaintiffs, by letters and telegrams, nearly every day, for the greater part of the time he operated, to sell and purchase wheat on his account and for his benefit. Under these contracts, whether a purchase or sale of wheat, the wheat was to be delivered in Milwaukee, and in most instances the defendant was a seller. The plaintiffs were members of the chamber of commerce in the city of Milwaukee, (a corpo-

ration created by the laws of Wisconsin,) and when orders were received by these plaintiffs from the defendants they made contracts with the members of the chamber, and in all contracts stipulated that they were subject to the rules and regulations of the chamber of commerce. The plaintiffs conducted the business in their own name, and upon the face of the contracts the name of their principal is not disclosed.

The purchase or sale of wheat to be delivered at a future time is a fair contract, if the intention of the contracting parties is to deliver the wheat, although it is not in their possession at the time of the contract of sale. But if the contract does not contemplate the delivery of wheat, but the settlement of differences between the contract price and the then market price, the transaction is illegal and void, being contrary to public policy, and demoralizing to legitimate trade and commerce. The chief controversy in this case is about the character of the transactions between the parties.

The defenses urged upon the part of the defendant to defeat a recovery may be reduced to two: *First,* that the contracts entered into by the plaintiffs as agents for the defendant were wagers, contrary to public policy and void; *second,* that the plaintiffs furnished the defendant money for the express purpose of enabling him to engage in an illegitimate enterprise, and therefore cannot recover for any advances made for such purpose. This is the theory of the case on the part of the defendant, and evidence has been introduced tending to support it.

The theory of the plaintiffs is, and evidence has been introduced tending to sustain it, that they were employed as brokers or commission merchants to purchase or to sell wheat for future delivery, and that in all of the contracts entered into by them with third parties they conducted the business in their own name, but for defendant's benefit and on his account, and in every instance an actual delivery of wheat was intended by them and the other parties to the contract, and that subsequently they were instructed to close up and settle up these contracts by the defendant, and in doing so, at his request, advances were made and their money paid out for his benefit, and to recover this sum suit is brought, and they are entitled to recover.

These are the issues between the parties which you are to decide. If you believe from the evidence that no wheat was to be delivered, and that the contracts for the sale and purchase of wheat were merely colorable, and were made and executed as a cover for speculations in

margins, and in case the price of wheat rose or fell in the market differences merely were to be paid, then the contracts are in their nature and character wagers, and illegal. Neither an offer or an ability to perform is required of either party in order to entitle the party claiming a breach of contract to the differences. If the plaintiffs, in your opinion, are shown by the evidence to have been employed by the defendant to make contracts of this character with third parties, and have conducted the business in their own name and for defendant's benefit, and supplied the defendant with funds for the express purpose of enabling the defendant to engage in these transactions, and have paid out and advanced money in the settlement of losses arising under such contracts, they cannot maintain this suit to recover the money so expended. In that case they knowingly furnish the means for an illegal transaction, and made advances in the settlement of losses under illegal contracts, and the court will not aid them to recover moneys thus paid out.

On the other hand, if you believe the evidence shows that the plaintiffs, acting as the defendant's brokers in the sale and purchase of wheat, without disclosing the name of their principal, entered into *bona fide* contracts for the actual sale and delivery of wheat with third parties for defendant's account, and at his request subsequently settled the losses and paid the amount due under the contracts, they are entitled to recover from the defendant the moneys thus paid out at his request. The form, however, of these contracts (which on their face specify wheat to be delivered) is not conclusive of their character. You must look into the transactions themselves, and determine from the testimony, and the facts and the circumstances attending the making of the contracts, and the conduct of the parties with reference to them, whether the contracts are illegal and void within the rule laid down, or whether they are *bona fide*, and in determining this question you may take into consideration the fact that these contracts are subject to the rules and regulations of the chamber of commerce in the city of Milwaukee, and that under those rules it is possible for persons on that board to speculate in margins under the forms of contracts like those in evidence; and you may also look at the usages of this trade and business in order to determine the intention of the parties thereto.

If, on full consideration, you should determine the arrangement or understanding between the parties to the contract was a gaming transaction, as defined, and the money was advanced by plaintiffs to enable the defendant to engage in such illegal transactions, and that

the plaintiffs and defendant had in view mere wagering contracts upon the price of wheat, and the advances which the plaintiffs made were paid out in contracts, which, between the plaintiffs and the parties with whom they dealt, were bets upon the market price of wheat, no delivery having been made or contemplated, then the plaintiffs cannot recover, and your verdict will be for the defendant.

If, on the other hand, you believe from the evidence the transactions were *bona fide* on the part of the plaintiffs; that they were employed by the defendant to buy and sell wheat for actual delivery, and bought and sold for actual delivery in their own name, but for defendant's benefit; that losses occurred in such transactions, and that plaintiffs advanced money to pay such losses,—the plaintiffs are entitled to recover.

You are to determine which theory is proved by the testimony. It is not the policy of the law to encourage or sanction wagering transactions (or any transactions) having an injurious and immoral tendency. But, on the other hand, if a principal employs an agent to transact a legitimate business for him, and in conducting such business the agent is authorized to advance money on his principal's account, in which case the law protects the agent, and he may recover the money so advanced, provided the transactions are legitimate.

Several special instructions have been requested on the part of the plaintiffs, as well as on the part of the defendant. I will read them with such modifications as I have made, giving some and rejecting others.

The jury are instructed that it is not gambling for a party to enter into a fair and *bona fide* agreement to purchase or to sell property for future delivery. And the jury are further instructed that it is not necessary, in case of a sale or purchase of property for future delivery, that the party buying or selling should actually have the property in his possession or under his control at the time of entering into the contract of sale or purchase.

If the jury find from the evidence that the defendant requested the plaintiffs to purchase or to sell wheat for him for future delivery; and further find from the evidence that plaintiffs made such purchases, and in doing so entered into the contract read in evidence, and such contract intended the actual delivery of wheat, and subsequently were obliged to pay and did pay losses occasioned by the making of the said contracts; and further find from the evidence that at the time the said contracts of sale and purchase were made neither of the parties to the said contracts had either possession or control of wheat enough to fill the contracts,—that then and under such circumstances the contracts of purchase or sale are not wagering or gambling contracts, although the defendant, at the time he gave the order to buy or to sell, had no design, purpose, or intention to either receive or deliver this

wheat, but designed and intended merely to sell out before the time of delivery or receipt, and settle or adjust the losses on the mere differences in the market value of the wheat.

That is, in substance, that it is not necessary for parties to enter into a contract for sale or purchase, wheat to be delivered at a future time, to have the wheat on hand at the time. That fact does not make it a gambling contract, neither does it make them gambling contracts if only one party intends to gamble by the transaction and not intend to furnish or deliver the wheat which upon the contracts themselves purport to be delivered at a future time.

If the jury find from the evidence that the plaintiffs are commission merchants in the city of Milwaukee and members of the chamber of commerce in that city, and that they, from time to time, and at various times, in 1880 and 1881, received orders from the defendant to buy or sell wheat; and further find from the evidence that plaintiffs, acting in good faith and in the belief that defendant was sending said orders in good faith, made actual purchases and sales for said defendant at his request, as ordered, and in such transactions laid out and expended money for defendant for the purpose of such actual delivery, then the plaintiffs are entitled to recover the amount thus paid, laid out, and expended for this defendant.

If the jury find from the evidence that the plaintiffs are commission merchants in the city of Milwaukee and members of the chamber of commerce in that city, and that they acted as the brokers of defendant and at defendant's request, and from time to time and at various times made in good faith the contracts read in evidence, on the order of defendant, and that said contracts intended the actual delivery of wheat therein mentioned, and in settlement of said contracts paid, laid out, and expended money, for the money thus paid, laid out, and expended for the defendant, they can recover in this action.

The contracts read in evidence are *prima facie* valid contracts in law, and such contracts cannot be rendered illegal by the mere intention of the defendant alone that he did not intend to deliver or receive the property.

That is, it takes two to make a contract. One party cannot defeat a contract and render it void in his own mind.

To make said contract read in evidence void, as wagering or gambling contracts, each party to the contract must have designed and intended at the time the contract was entered into not to buy or receive the property, but to sell on the mere difference between the contract price and the market price.

If the jury find from the evidence that the defendant intended to gamble in wheat, and at no time to deliver or receive the property or pay for it, and further find from the evidence that the plaintiffs were ignorant of such intention on the part of the defendant, and received the order of defendant to buy and to sell, and in good faith proceeded to buy and to sell on his orders, and in doing so incurred obligations for said defendant, by the contract read, and said contracts intended the actual delivery of wheat in evidence,

and that plaintiffs afterwards paid thereon money to settle or adjust the said contracts, then the plaintiffs are entitled to recover in this action for the money so paid.

I refuse to give No. 6.

I refuse to give No. 7.

If the plaintiffs rendered to the defendant, from time to time, statements of purchases and sales made on his account showing prices paid and received. and such purchases and sales were for the actual delivery of wheat,—

(That is, you have heard the statements which were put in evidence, which were rendered; now, if you believe those statements represented purchases and sales for the actual delivery of wheat;)

—And he retained them and did not within a reasonable time object to them, the law implies their correctness, and implies a contract by the defendant to pay the plaintiffs any balance that such statements show to be due to them.

The burden of proof is on the defendant to show that these were gambling transactions. *Prima facie* they are valid, and if the defendant has failed to satisfy you by a fair preponderance of testimony that they were gambling contracts, the plaintiffs are entitled to recover.

There are several requests on the part of the defendant. I give three of them and refuse one:

If the jury believe from the evidence that the transactions between the plaintiffs and defendant were transactions in which no actual sale and delivery of wheat was contemplated, but merely the payment of differences according to the rise and fall of the grain market, the contracts were gambling contracts, and void in law.

If the jury find from the evidence that the plaintiffs in the transactions in controversy were brokers or factors of the defendant, and that in said transactions no actual sale and delivery of grain was contemplated, but merely the payment of differences according to the rise and fall of the grain market, and that plaintiffs performed services for the defendant, and supplied him with funds, and made advances for the express purpose of enabling defendant to engage in such transactions, and if they, as agents of the defendant, conducted such illegal ventures in their own name, they became *particeps criminis,* and the law will not aid them to recover moneys advanced for such purpose, or commissions earned in such transactions, and your verdict must be for the defendant.

The jury may look to the usages of the trade or business to learn the real intentions of the parties.

I refuse to give the fourth.

Now, gentlemen, I have gone all over this case. You will give it due consideration, and enter upon your duties with a determination to give such a verdict as the facts disclosed by the evidence, and the law applicable to them, will justify.

The evidence disclosed presents for your decision this inquiry, upon which the case turns:

*Did the contracts in evidence intend an actual delivery of wheat, or were they mere subterfuges for speculations in margins?*

This is the simple issue upon which the case turns. If the former, plaintiffs are entitled to recover. If the latter, your verdict should be for the defendant.

This is a very expensive litigation, involving a great deal of money. It is an important case, and will settle not only private rights here, but matters in which the public are interested, and I hope you will go through with it with a determination to arrive at a verdict. You have been selected to settle the controversies here involved. I hope you will exercise due forbearance, not yielding your convictions, but enter into the jury-room with the determination to settle the controversy. Let it end with your verdict, gentlemen, so far as the questions of fact are concerned.

---

## THE ODER.

*(Circuit Court, E. D. New York. July 22, 1882.)*

COLLISION—SAIL-VESSEL IN FAULT—NEGLECT TO SHOW LIGHTS.

Where a steam-ship in mid-ocean, on a dark night, was approaching a bark from aft in a course that rendered it impossible for her lookouts to see the regulation-lights of the bark, but the lights of the steamer were in full view of those on the bark, who knew her to be a steamer approaching the bark on a course crossing her course, so as to involve the risk of collision, yet those on the bark, though having ample time so to do, did not show any light or give any other warning to the steam-ship to notify her in time of the position of the bark, and the steam-ship, immediately on discovering the bark, threw her wheel hard a-port, and, at the same time, backed at full speed, but too late to avoid collision, *held*, that the bark was alone in fault, and that the libel against the steamer be dismissed.

*Henry T. Wing*, for libelants.

*William G. Choate*, for claimant.

In this case I find the following facts:

On the night of June 7, 1879, a collision occurred in the Atlantic ocean, to the eastward of the Grand Banks, in about latitude 48 deg. 1 min. N. and longitude 38 deg. 9 min. W., between the libelant's bark, the Collector, and the claimant's steam-ship, the Oder. The night was dark, and it was somewhat overcast at times, and no stars or moon were visible, but the lights of vessels, of ordinary brilliancy, and properly set and burning brightly, could be seen at a dis-