## Alonzo B. Raymond et al v. Alvah E. Leavitt.

*Account stated—Gamblers in wheat.*

A statement is not, in law, an account stated, if neither party agrees to it.

One who lends or advances money to be used for the purpose of making a corner in wheat cannot recover it back by any legal measures.

Error to Wayne. Submitted June 23. Decided June 29.

ASSUMPSIT. Defendant brings error. Reversed.

*Otto Kirchner* and *C. A. Kent* for plaintiff in error. A stated account is an *agreement* between the parties that all the items are true: *Stebbins v. Niles* 25 Miss. 267; both parties must assent to the correctness of the account: *Stenton v. Jerome* 54 N. Y. 480; *Kock v. Bonitz* 4 Daly 117; the assent of one is not enough: *White v. Campbell* 25 Mich. 464; money paid in furtherance of an illegal transaction cannot be recovered back: *Dixon v. Olmstead* 9 Vt. 310; *Foote v. Emerson* 10 Vt. 338; *Langton v. Hughes* 1 M. & S. 592; *Wheeler v. Russell* 17 Mass. 258; *Kingsbury v. Flemming* 66 N. C. 524; *McKinnell v. Robinson* 3 M. & W. 434; combinations to raise the price of necessaries are unlawful: *Arnot v. Pittston & Elmira Coal Co.* 68 N. Y. 558; *Morris Run Coal Co. v. Barclay Coal Co.* 68 Penn. St. 173; the illegality of a claim is not removed by making an account of it: *Keane v. Branden* 12 La. Ann. 20.

*Henry M. Cheever* for defendant in error. It is only necessary to an account stated that the party charged admits a certain indebtedness: 1 Chitty Pl. 358; *Porter v. Cooper* 4 Tyr. 264; *Breckon v. Smith* 1 Adol. & Ell. 488; *Stevens v. Tuller* 4 Mich. 387; *Gooding v. Hingston* 20 Mich. 441; *Trueman v. Hurst* 1 Term 42; *Dawson v. Remnant* 6 Esp. 24; *Fitch v. Leitch* 11 Leigh 471; a firm is liable for money borrowed to be used in its business whether it was so used or was misappropriated; *Church v. Sparrow* 5 Wend. 223; *Vienne v. Harris* 14 La. Ann. 382; *Onondaga v. DePuy* 17 Wend. 47; *Whitaker v. Brown* 16 id. 505; *Saufley v. Howard* 7 Dana (Ky.) 367; its recovery would not involve the enforcement of an illegal contract: *Willson v. Owen* 30 Mich. 474.

CAMPBELL, J. Leavitt sued plaintiffs in error on the common counts and served a bill of particulars in which the demands were set out under different forms and items as

$10,000 money lent, $10,000 handed defendants for their use on their guaranty that it should be repaid in a reasonable time, $10,000 deposited with them for their accommodation, and $2327.53 on account stated.  He recovered $3027.53, which is claimed on the argument to have been made up by the sum of what is called an account stated, and an error of $700.

The plaintiff's story on oath was that the sum of $10,000 was advanced by him in May, 1880, to defendants for the purpose of controlling the wheat market at Detroit for what is called by the parties the May deal, with a view of forcing up prices, and producing what is understood as a corner, and compelling parties who had contracts to fill to pay a higher price for wheat to fill them.   Defendants, as he testified, were to give him a third of the expected profits, and to repay the $10,000 with or without profits at all events.

Defendants claimed that Leavitt furnished the $10,000 as a margin for these wheat transactions, and was to bear his risks, and that the speculations resulted in a loss.

At the end of July, 1880, defendants gave plaintiff three documents or statements, exhibiting transactions up to that time, in which he was treated as a party concerned in the transactions, and one of these papers showed in a brief way that at that time there was left of his share no more than $2327.50.   This is now claimed to be an account stated.

Several special questions were left to the jury and they found that there was no loan made, and that defendants, when they rendered these statements, understood the business was closed.   They also negatived the giving of the money for the purpose of contracting for more wheat than could be delivered, and thus artificially raising the price.

If the testimony is properly printed, it does not appear distinctly that any one swore the purpose was merely to raise the price of wheat so as to get the advantage of those who should agree to sell to defendants themselves, but rather to so raise it as to compel all persons, who had wheat to deliver to anybody, to pay larger prices.   The answer given by the jury does not fully meet the testimony.

We do not understand on what basis plaintiff recovered under his bill of particulars. He never advanced to defendants any sums except two $5000 items, amounting to $10,000. If there was any money to be returned under his particulars it could have been no less than $10,000. On the other hand both parties repudiated the idea that they had ever agreed on the July bills or any of them, as settling the amount due from one to the other; and there cannot be in law an account stated that neither party agrees to. It is impossible to support the judgment on any theory of the evidence that conforms to the demands of either party.

But the defendants, both at the close of plaintiff's case and at the close of the whole testimony, asked for instructions that the plaintiff should not recover, and in our opinion they should have been given.

The object of the arrangement between these parties was to force a fictitious and unnatural rise in the wheat market for the express purpose of getting the advantage of dealers and purchasers, whose necessities compelled them to buy, and necessarily to create a similar difficulty as to all persons who had to obtain or use that commodity, which is an article indispensable to every family in the country. That such transactions are hazardous to the comfort of the community is universally recognized. This alone may not be enough to make them illegal. But it is enough to make them so questionable that very little further is required to bring them within distinct legal prohibition.

The cases of *The Morris Run Coal Co. v. Barclay Coal Co.* 68 Penn. St. 173, and *Arnot v. Pittston & Elmira Coal Co.* 68 N. Y. 558, held contracts involving similar dealings with coal, to be against public policy. And we think the reasoning of those cases is based on familiar common-law principles, which apply more strongly to provisions than to any other articles.

There is no doubt that modern ideas of trade have practically abrogated some common-law doctrines which are supposed to unduly hamper commerce. At the common law there is no doubt such transactions as were here contem-

plated, although confined to a single person, were indictable misdemeanors under the law applicable to forestalling and engrossing. Some of our states have abolished the old statutes which were adopted on this subject, and which were sometimes regarded as embodying the whole law of such cases. Where this has been done, as in New York, the statutes have replaced them by restraints on combinations for that purpose, leaving individual action free. In England there have been several statutes narrowing or repealing all of the ancient statutes, and more recently covering the whole ground. But so long as the early statutes only were repealed, it was considered that enough remained of the common law to punish combinations to enhance values of commodities. And when this doctrine became narrowed, it seems to have been considered that such combinations to enhance the price of provisions remained under the ban.

In *Rex v. Waddington* 1 East 143, and s. c. 1 East 167, it was held the common law was still in force to punish engrossing the necessaries of life or provisions by single persons. The chief difficulty was in determining whether hops came within that rule, and it was held they did, and that the Legislature only could change the law. The defendant was heavily fined. That case has been sharply criticised as not in harmony with modern political economy, and it no doubt goes beyond what would be considered proper among us. It has never, so far as the researches of Mr. Bishop have gone,—and he seldom over-looks important cases,—been judicially disapproved, although statutes have been made to change the rule. See 1 Bish. Cr. L. §§ 527, 528, and notes to 6th edition. And he intimates that conspiracies for such purposes may perhaps be punished, even where the individual offence has been abolished. See also, vol. 2, §§ 202, 206, 216, 220, 230, 231 and notes.

In *Rex v. Hilbers* 2 Chitty 163, it was held that there must be a combination of more than one person before an information will be granted for enhancing the price of necessaries.

Mr. Russell gives it as his opinion that in our day single offenders would not be regarded as punishable unless their offence relates to provisions. 1 Russ. 170. But where there is a conspiracy the law has been given a much wider application, and the case of *Rex v. De Berenger* 3 M. & S. 67, has obtained celebrity from the high rank of the offenders who were convicted,—(and one of them at least, Lord Cochrane, unjustly)—of conspiring to raise the price of stocks by false rumors.

We have not referred to these cases to assert the propriety of enforcing common-law criminal penalties contrary to the general understanding of the business community. While these offences have never been abolished in this State by statute, and might theoretically be, therefore, within the possible range of our laws, there would be no toleration of their strict prosecution against single persons to the common-law extent as crimes.

But the general sentiment has not led to any change in legislation or to any recognition of the legal propriety of allowing every species of produce gambling to be made susceptible of enforcement by contract. We must wilfully shut our eyes before we can fail to see that a combination between a man who furnishes money and dealers who manipulate the market, where the money invested is but a trifling percentage of the property to be handled, and where the only intent is to produce unnatural fluctuations in prices, is entirely outside the limits of buying and selling for honest trade purposes. It is the plainest and worst kind of produce gambling, and it is impossible for any but dangerous results to come from it.

We do not feel called upon to regard so much of the common law to be obsolete as treats these combinations as unlawful, whether they should now be held punishable as crimes or not. The statute of New York, which is universally conceded to be a limitation of common-law offences, is referred to in the case in 68 N. Y. as rendering such conspiracies unlawful, and this had been previously held in *People v. Fisher* 14 Wend. 9, where the subject is discussed at length. There may be difficulties in determining con-

duct as in violation of public policy, where it has not before been covered by statutes or precedents. But in the case before us the conduct of the parties comes within the undisputed censure of the law of the land, and we cannot save the transaction without doing so on the ground that such dealings are so manifestly sanctioned by usage and public approval that it would be absurd to suppose the Legislature, if attention were called to them, would not legalize them. We do not think public opinion has become so thoroughly demoralized; and until the law is changed we shall decline enforcing such contracts. If parties see fit to invest money in such ventures they must get it back by some other than legal measures.

Judgment must be reversed with costs and a new trial granted.

The other Justices concurred.