M. W. KERWIN & COMPANY, Respondents, v. PATRICK DORAN, Appellant.

Kansas City Court of Appeals, February 20, 1888.

1. CONTRACT OF SALE—WHERE MADE AND COMPLETED—PLACE OF PERFORMANCE AND PAYMENT—CASE ADJUDGED.—Where the goods (as in this case) were sold on orders sent by defendant, or plaintiffs' agent, by mail to plaintiffs' house in Chicago, subject to plaintiffs' approval; and the orders were accepted, and the goods were delivered by plaintiffs to a railroad company in Chicago, as a common carrier, according to the usual course of such business, this was a sale completed in Chicago, and the contract is to be regarded and treated as having been made in the state of Illinois; and Chicago is also to be regarded as the place of performance and payment, in the absence of any evidence to the contrary; and the contract of sale is to be construed and applied according to the *lex loci contractus.* If valid there, it is, by the general law of nations, held valid everywhere by the tacit consent of the parties. And if void or illegal there contracts are generally held void and illegal everywhere. (Story on Conflict of Laws, secs. 242, 243). The exception to this rule is, that no state or nation is bound to recognize and enforce contracts made in another state, which are inimical or injurious to its own interests, or that of its subjects, it being a question of comity and not of strict right.

:2. ———— KNOWLEDGE BY VENDOR OF UNLAWFUL USE OF GOODS BY
VENDEE—EFFECT OF.—Mere knowledge on the part of the vendor
that the vendee intends to make an unlawful use of the goods
sold is not sufficient to invalidate the sale, the contract being
otherwise complete and valid at the place of sale.

.3. ———— COMITY—PRINCIPLES GOVERNING—CASE ADJUDGED.—It is a
maxim that comity cannot prevail in cases where it violates the
law of our own country, or the law of nature, or the law of God.
Contracts, therefore, which are in evasion or fraud of the laws of
a country, or of the rights of its subjects, or against morals, or
·against religion ; or against public rights ; or opposed to the
national policy or institutions, are deemed nullities in every coun-
try affected by such considerations, although they may be valid by
.the laws of the place where they are made. But they may be
enforced where made, or elsewhere in states having a like policy.
'So the contract in this case having been made in Illinois, and
being neither in contravention of any statute law or local policy of
that state, nor immoral in the legal sense of the term, the statute
of Iowa, which has no extra-territorial operation, cannot be inter-
posed in a foreign jurisdiction to defeat the contract.

APPEAL from Nodaway Circuit Court, HON. CYRUS
A. ANTHONY, Judge.

*Affirmed.*

The case is stated in the opinion.

WILLIAMS & JACQUES, W. W. RAMSEY, and M.
SAUNDERS, for the appellant.

I.   The trial court erred in sustaining plaintiffs'
motion to strike out the second count of defendant's
answer; such a counter-claim has been sustained.
*Weber v. How*, 36 Mich. 150. This count alleged a
contract made in Iowa ; the motion confessed the fact ;
hence, the law of Iowa must govern this contract.   Story
.Conf. Laws, secs. 242, 280 ; *Bank v. Donnally*, 8 Peters
[U. S.] 372 ; *Broadhead v. Noyes*, 9 Mo. 56 ; *Golsen v.
Ebert*, 52 Mo. 260 ; *Roach v. Type Foundry*, 21 Mo.
App. 118 ; *Burchard v. Dunbar*, 82 Ill. 450 ; *Hill v.
Spear*, 50 N. H. 253 ; 2 Parsons on Contracts, 586.   If
this counter-claim could have been pleaded in Iowa,
·where it is alleged the contract was made and would

have been a good defence there, then it was a good defence in Missouri, where suit was brought, and where neither of the parties lived.

II. The court erred in permitting the witness, M. W. Murphy, to testify concerning the customs of his house, in the employment of salesmen and in approving and executing their orders. Such custom did not prove, or tend to prove, the authority in fact given the salesman who made the sale in question.

III. The court erred in sustaining the plaintiffs' objection to defendant's questions propounded to plaintiff, Murphy, touching the reason plaintiffs sued in this state, and in not permitting plaintiff to be interrogated touching the same. It was important to know whether plaintiff knew that by his own act he had violated the law of Iowa. *Gaylord v. Soragen*, 32 Vt. 110; *Aiken v. Blaisdell*, 41 Vt. 656. It was important to know whether this deal was an ordinary sale of goods, or whether plaintiffs actively participated in violating a state law. *Hill v. Spear*, 50 N. H. 523. This was certainly proper on cross-examination. 1 Greenl. Evid., sec., 446.

IV. The court erred in giving instructions number one and two for plaintiffs. These instructions were in no wise applicable to the case as made in the pleadings and by the evidence. *State v. Miller*, 67 Mo. 604; *State v. Little*, 67 Mo. 624; *Kaufman v. Harrington*, 23 Mo. App. 572; *Weil v. Schwartz*, 21 Mo. App. 372.

V. The court erred in refusing to give instruction number three on part of defendant. This instruction required knowledge of Iowa law and of Doran's guilty pursuit and active participation to avoid state laws. *Gaylord v. Soragen*, 32 Vt. 110; *Aiken v. Blaisdell*, 41 Vt. 656; *Webster v. Munger*, 8 Gray, 587; *Feineman v. Sachs*, 33 Kas. 621. In all of these and other leading cases, the courts draw a distinction between a plaintiff who simply knew of the foreign law, and that his vendee might intend to violate it, and a plaintiff who actually aided his vendee to evade and violate the law. The

former has been permitted to recover, but the latter never that we know of. *Curran v. Downs*, 3 Mo. App. 468; *Mitchall v. Bacon*, 49 Mo. 474; *Belding v. Pitkins*, 2 Cains. 147; *Wheeler v. Russell*, 16 Mass. 258.

VI. The court erred in refusing to give instructions numbers six and nine. *Hall v. Ruggles*, 56 N. Y. 428; *Arnot v. Pittman*, 68 N. Y. 567; Benj. on Sales, secs. 506, 508; Story Confl. of Laws, secs. 256, 257; *Davis v. Bronson*, 6 Iowa, 410. Such contracts arising out of moral or political turpitude, and in evasion of laws and in fraud of the just rights of any foreign nation, ought to be enforced in any forum. *Armstrong v. Toler*, 11 Wheaton, 258; Story Confl. of Laws, sec. 259.

VII. The record shows that plaintiffs acted in disregard of the law of Iowa, not only in the sale, but in the institution of this suit in a foreign state upon the law of comity also. *Green v. Van Buskirt*, 5 Wall. (U. S.) 327.

IRA K. ALDERMAN and E. S. JANES, for the respondents.

I. The trial court properly sustained plaintiffs' motion to strike out the second count of defendant's answer. This count pleaded a penal statute of a sister state as a defence. It is a rule universal that penal statutes are not enforceable outside of the state where enacted. The form of the action or remedy must be according to the *lex loci*. *McAlister v. Smith*, 17 Ill. 328; *Smith v. Godfrey*, 28 N. H. 379; *Bank v. Kidder*, 12 Vt. 464; Story's Conf. of Laws, sec. 619; 2 Kent's Com. 454; *Gale v. Easton*, 7 Metc. [Mass.] 14. Defendant pleads his counter-claim as if based absolutely on a *bona-fide* contract, and then pleads the Iowa statute. Such was not the case. It was only a contract constructively, and hence, only applied in the state where the law operated, and such a statute cannot be enforced in a *forum* where such a contract as sued on is lawful.

II. The court, sitting as a jury, like a jury, is judge of the evidence and weight of the evidence. The

first count in defendant's answer, and the reply thereto by plaintiffs, put in issue a fact, to-wit, the *locus contractus* of the purchase, sale, and delivery, which formed the basis of plaintiffs' action. The verdict on the evidence was for plaintiffs, and the appellate court will not review this branch of the case. *Anderson v. Griffith*, 86 Mo. 549 ; *Webb v. Webb*, 87 Mo. 540 ; *Snyder v. Burnham*, 77 Mo. 52 ; *Brown v. Railroad*, 23 Mo. App. 209 ; *Fox v. Young*, 22 Mo. App. 386 ; *Hulbert v. Jenkins*, 22 Mo. App. 572 ; *Perkinson v. Fehlig*, 21 Mo. App. 327, and *O' Conner v. Standard Theatre Co.*, 17 Mo. App. 675.

III. The contract sued on was made and concluded in the city of Chicago, in the state of Illinois, where it is not questioned the law sanctioned it. The mere fact of plaintiffs' knowledge of the intention and purpose of defendant to illegally sell the liquors purchased by him, does not affect the validity of the contract. It is very clear, in this case, that it was not an ingredient of the contract that the liquors were to be illegally sold by the defendant in Iowa, or that the liquors were to be sold at all, or that plaintiffs had any interest directly or remotely in the result of such alleged sales, or were in any way to assist defendant in such sales. In so far as the evidence shows, this was purely defendant's business, prompted and executed by his own volition.

IV. A contract is to be governed and construed by the *lex loci contractus*, unless another place is appointed for its performance. See authorities cited under point I., and also, *State v. Shaeffer*, 89 Mo. 271 ; *Graff v. Foster*, 67 Mo. 512 ; Schouler on Bailments, 456 or 556 ; *Stewart v. Jessup*, 51 Ind. 413 ; *Norris v. State*, 25 Ohio St. 217 ; *State v. Dennis*, 80 Mo. 594 ; *Dennis v. Eversole*, 101 Ill. 138 ; Bishop on Contracts, sec. 1376 ; *Swan v. Swan*, 21 Fed. Rep. 299 ; *Gauthier v. Cole*, 17 Fed. Rep. 716 ; *Taylor v. Pickett*, 3 N. W. Rep. 514 ;

*Gross v. Scarr,* 33 N. W. Rep. 223 ; *Feineman v. Sachs,* 33 Kan. 621 ; *Weil v. Golden,* 6 N. E. Rep. 229, and note, p. 232.

V. "It is a general rule of international law, that the rights of the parties to a contract, as distinguished from their remedies, are to be determined by the law of the place where the contract is to be performed," but the place of performance must clearly appear by the terms of the contract, or the *lex loci contractus* governs as to validity and construction, and the *lex fori* governs as to remedy of personal contracts. *Kanaga v. Taylor,* 7 Ohio St. 134 ; 70 Am. Dec. 62, and note, p. 66, and authorities cited ; 91 U. S. Rep. [1 Otto] 406.

Philips, P. J.—Prior to the making of the contracts in question, and ever since, there existed in the state of Iowa what is commonly known as a prohibitory law against the sale of intoxicating liquors. By it no person was permitted to manufacture, or sell, or keep for the purpose of sale, any such liquors in the state, except for mechanical, medicinal, culinary, and sacramental purposes. By it all contracts of sales, and obligations therefor, were declared void ; and all payments made therefor are declared to be in violation of the statute, and to have been received upon a promise to refund the same to the party so paying it. It also declares that no action of any kind should be maintainable in any court of that state for intoxicating liquors, or the value thereof sold in any other state, contrary to the law of the state in which such sale was made, or with the intent to enable any person to violate the said law, etc.

The defendant was a saloon-keeper at Ottumwa, in Iowa. The plaintiffs were merchants in the city of Chicago, state of Illinois. Before the making of the contracts in question a traveling salesman of plaintiffs' house visited the defendant at his place of business in Ottumwa, and solicited custom from him, and obtained some orders from defendant on the house in Chicago for

such liquors. After which the defendant sent many orders by letter to plaintiffs for liquors. The evidence tended to show that such orders were sent subject to the approval of the Chicago house. They packed the goods, directed as agreed upon by the parties, and delivered them to the railroad companies at Chicago, as common carriers, to be transported to the party named, at Ottumwa. From the time that defendant began thus to transact business with the plaintiffs, he made them payments aggregating about eleven hundred dollars, leaving a balance on account due and owing to plaintiffs, of about $339.90; to recover which this action is brought.

The defendant having in this state certain personal property, the plaintiffs instituted suit by attaching such property. The defendant entered his personal appearance to this action, and set up the said statute of Iowa, alleging that the contracts of sale aforesaid were made in violation thereof, and were, therefore, void. The answer further pleaded, by way of counter-claim, the payments so made as aforesaid by defendant to plaintiffs, as authorized by said Iowa statute; the answer averring that the said contracts were made in the state of Iowa. To this part of the answer the plaintiffs demurred, or made a motion to strike out, as constituting no defence or right of action. The court sustained the motion, and defendant excepted. The cause at issue was submitted to the court for trial without the interposition of a jury. The court found the issues for plaintiffs, and rendered judgment accordingly; to reverse which the defendant prosecutes this appeal.

I. This case presents questions of public and commercial importance, not free from embarrassment; and we have given them the best consideration we could.

The first question in order is, where was this contract made? The only instructions, set out in the appellant's abstract of record, bearing on this issue, declared, in substance, that if the goods were sold on orders sent by defendant, or plaintiffs' agent, by mail

to plaintiffs' house in Chicago, subject to plaintiffs' approval, and the orders were accepted, and the goods delivered by plaintiffs to a railroad company in Chicago, as a common carrier, according to the usual course of such business, this was a sale completed in Chicago. This asserted the law, and there was ample evidence to support it. *Weber v. Howe*, 36 Mich. 150; *Kling v. Friers*, 33 Mich. 275. Such being the case, the contract in question is to be regarded and treated as having been made in the state of Illinois; and Chicago is also to be regarded as the place of performance and payment, in the absence of any evidence to the contrary. Authorities *supra*, and *loc. cit.* Of consequence, the contract of sale is to be construed and applied according to the *lex loci contractus*. For, as expressed in the old form: " Obligations, in respect of the mode of their solemnization, are subject to the rule, *locus regit actum;* in respect of their interpretation, to the *lex loci contractus ;* in respect of their mode of performance, to the law of the place of their performance. But the *lex fori* determines when and how such laws, when foreign, are to be adopted, and, in all cases not specified above, supplies the applicatory law." Wheaton on Conflict of Laws, sec. 401. So, Story on Conflict of Laws (sec. 242) says : " If valid there (the *lex loci contractus*) it is, by the general law of nations, *jure gentium*, held valid everywhere by the tacit or implied consent of the parties. * * * No more forcible application can be propounded of this imperial doctrine, than to the subject of international private contracts." Again (sec. 243) : "If void or illegal by the law of the place of the contract, they are generally held void and illegal everywhere." The exception to this rule is, that no nation or state is bound to recognize and enforce contracts inimical or injurious to its own interests, or that of its subjects : " This exception results from the consideration that the authority of the acts and contracts done in other states, as well as the laws by which they are regulated, are not, *proprio vigore*, of any efficacy

beyond the territories of that state; and whatever
effect is attributed to them elsewhere is from comity, and
not of strict right.  And every independent community
will and ought to judge for itself how far that comity
ought to extend.  The reasonable limit is, that it shall
not suffer prejudice by its comity."  Story on Conf. of
Laws, sec. 244.  It follows, that if the sales of these
liquors were valid by the law of Illinois, they are valid
everywhere, provided they do not conflict with the good
morals and local policy and welfare of the state to
which the jurisdiction is drawn.  *Andrew v. Pond*, 13
Pet. 65; *Hill v. Spears*, 50 N. H. 262.  In the absence of
anything to the contrary appearing in evidence, we will
assume that the common law was in force in the state of
Illinois at the execution of the contract.  *Pofheimer v.
Losen*, 24 Mo. App. 658.  What, then, is there to inval-
idate this contract?  By the Iowa statute such contract
could not be enforced in the courts of that state if made
in the state.  Such statute, however, has no extra-terri-
torial force and operation, so as to invalidate a contract
made and valid, in another jurisdiction.  Had this suit
been brought in a court of the state of Iowa, much of
the argument made against the validity of this contract
would be pertinent.  In an early English case (*Holman
v. Johnson*, Cowp. 341) goods were sold in France by a
Frenchman to an English subject, for the known purpose
of being smuggled into England in violation of her
revenue laws.  It was held that the Frenchman could
maintain a suit in England to recover the price of the
goods, upon the ground that the sale was complete in
France, and the vendor had no immediate connection with
the smuggling transaction; and this, although the ven-
dor knew what disposition the buyer was going to make
of them.  Few decisions have produced more discussion
by courts and text-writers than this.  And while there
have been fluctuations, and possible contradictions, in
the course of subsequent adjudications in England, it is
safe to say, the principle of this decision is the recog-
nized law of the land.  See the very able and thorough

review of the authorities made in *Hill v. Spears,* 50 N. H., *supra.*

It is the generally accepted doctrine of the American courts, that mere knowledge on the part of the vendor that the vendee intends to make an unlawful use of the goods sold is not sufficient to invalidate the sale, the contract being otherwise complete and valid at the place of sale. *Smith v. Godfrey,* 8 Foster, 377 ; *Hill v. Spears, supra ; Gaylord v. Soregen,* 32 Vt. 110 ; *Aiken v. Blaisdell,* 41 Vt. 656 ; *McIntyre v. Parks,* 3 Met. 207 ; *Finch v. Mansfield,* 97 Mass. 89 ; *Kling v. Fries,* 33 Mich. 275 ; *Rachke v. Brewing Co.,* 33 Mich. 340 ; *Feineman v. Sachs,* 33 Kan. 621 ; *Hull v. Ruggers,* 56 N. Y. 424 ; *Adams v. Coullard,* 102 Mass. 167 ; *Tracy v. Talmage,* 14 N. Y. 162 ; *McGavock v. Puryear,* 6 Coldw. (Tenn.) 34 ; *Bank v. Owens,* 2 Pet. 527 ; *Jameson v. Gregory,* 4 Met. (Ky.) 363. This doctrine has been recognized in this jurisdiction. *Curran v. Downs,* 3 Mo. App. 468 ; *Michael v. Bacon,* 49 Mo. 474.

But it is further contended by defendant's counsel, that plaintiffs not only knew that the defendant was to employ the goods for an unlawful purpose under the laws of Iowa, but they actually participated in the contemplated fraud upon the local policy and statute law of that state ; and that this made them so far *participes criminis* in the wrong, as to deny them the aid of the courts to enforce their contract.

The evidence shows that in shipping the goods the plaintiffs packed them in barrels or hogsheads, and marked them as queensware, and the like, and directed to another party than the defendant, and that this was done to secure their acceptance and carriage by the railroad company, and to prevent their detection by the officers of Iowa. There was sufficient in the evidence, also, to justify the court in submitting to the verdict of the jury whether or not this was not so done by the plaintiffs as a part of the agreement between them and the defendant, so as to constitute it a part of the *res gestae.* These facts, under the authorities *supra,* would have

been sufficient to defeat this action, had the same been brought in the courts of Iowa against the offending liquor-dealer. This case, however, is singular in the fact that the action is brought on the contract in a state different from that in which the prohibition law exists. In all the adjudications cited, or which I have been able to find, *in pari materia*, the action was instituted against the purchaser in the state of which he was a subject, and whose local law was thus sought to be violated or evaded. The question then occurs whether the courts of another jurisdiction should so apply the above rule, where the transaction would be valid and enforceable, but for the local statute of another state, intended to be violated.

There can be no question but if this action had been brought in the courts of Iowa, it would fail because the contract was in contravention of the local policy and statutes of that state. And equally well settled is it, that had the contract been made in Iowa and suit been brought here to enforce it, our courts would also hold it invalid, as the comity of suit brings with it the comity of contract. *Blanchard v. Russell*, 13 Mass. 4; *Bank v. Earle*, 13 Pet. 520. But this contract was made in the state of Illinois. It was not contrary to public morals, as applied in the administration of law. Neither was it *malum prohibitum* by any statute or law of Illinois, nor repugnant to its internal policy. And this is likewise true of the *forum* in which this action is brought.

The invalidity of this contract must, therefore, spring from the local statute law of the state of Iowa, where the contract was neither made nor to be performed, nor where the suit is brought. As already said, had this action been brought in Iowa it would have failed because of the active participation by plaintiffs in clandestinely packing and shipping the goods with a view of evading the local statute law of that state. For, in that instance, although the act done was beyond the territorial limits and jurisdiction of the courts of Iowa, it was a conspiracy to thwart the operation of her local

laws and state policy; and she would, therefore, deny to the plaintiffs the aid of her courts to enforce the contract so made in the foreign jurisdiction. This results from the principle, already announced, that the authority of the acts done and contracts made in another state have no efficacy beyond the limits of the jurisdiction where done and made; and as they are only recognized in the foreign *forum* from comity, they will not be regarded or enforced by the tribunals of the *forum* whose local laws and policy were designed to be violated by the contract.

As said by Mr. Justice Best, in *Forbes v. Cochrane*, 2 B. & C. 448-471: "It is a maxim that the comity cannot prevail in cases where it violates the law of our own country, or the law of nature, or the law of God. Contracts, therefore, which are in evasion or fraud of the laws of a country, or of the rights or duties of its subjects, contracts against morals, or against religion, or against public rights, and contracts opposed to the national policy or national institutions, are deemed nullities in every *country affected by such considerations*, although they may be valid by the laws of the place where they are made."

So it will be found in every instance, like the case at bar, where the act done by the vendor beyond the jurisdiction of the state or nation, though valid in the state where the contract was made, was held to defeat the contract, the action was brought in the jurisdiction of the subject's residence, the local policy of whose laws the contract was designed to violate.

Story on Conflict of Laws (sec. 255), in speaking to this matter, says that, where a contract is made in foreign parts to smuggle goods in violation of the laws of the party's own country, "he shall not be permitted to enforce it *in the courts of his own country*, although the contract of sale is complete, and might be enforced in the like case of a foreigner."

In *Pellecat v. Angle*, 2 C. M. & R. 311, the defendant, a British subject, accepted a bill of exchange in

France, payable to a Frenchman, for the price of a bill
of goods bought in Paris for the avowed purpose of
being smuggled into England in violation of her revenue
laws.    The suit was brought against the British subject
in England, and Lord Abinger said: "It is perfectly
clear, that, where parties enter into a contract to contra-
vene the laws of their own country, such a contract is
void; but it is equally clear from a long series of cases
that the subject of a foreign country is not bound to pay
allegiance to the revenue laws of this; except, indeed,
that, where he comes within the act of breaking them
himself, he cannot recover *here* the fruits of that illegal
act.    *   *   *   Can a British tribunal be called upon to
enforce such a contract? Can it be called upon to aid a
Frenchman to recover a debt contracted for the purpose
of violating British laws?   *   *   *   Can a contract be
fit to be entertained in a British court whose very object
is to aid in a violation of British laws, policy, and
morals?"

No matter what publicists, like Pothier and Hu-
beras, or our own great jurist and author, Judge Story,
may deem the sounder ethics, or better code of public
morals, it is the established rule of law, that a contract
made between the subjects of one country to defraud the
revenue laws of another, may be enforced in the courts
of the country where such contract was made, as "no
nation is bound to protect or regard the revenue laws of
another country." Story Conf. of Laws, secs. 245, 257.
By analogy, the conclusion would seem to follow, that
this contract having been made in the state of Illinois,
and being neither in contravention of any statute law or
local policy of that state, nor immoral, in the legal
sense of the term, the statute law of the state of Iowa,
which has no extra-territorial operation, cannot be
transplanted, and interposed in the foreign jurisdiction
to defeat the contract in question.

We have not overlooked the suggestions made by
the learned counsel touching the impolicy of the courts
of the foreign jurisdiction, to which the action is drawn,

enabling the non-resident to evade the local policy of a sister state. An appeal to public policy is often quite indefinable and meaningless. Questions of policy are fickle. They are not uniform. It may be one thing in one community and quite another in a different locality. As said by an eminent English judge : " It is a very unruly horse, and when once you get astride it, you never know where it will carry you. It may lead you from the sound law. It is never argued at all but when other points fail." *Richardson v. Mellish*, 2 Bing. 242.

II. The remaining question for consideration is the counter-claim set up by defendant. In the first place, this right of action is not a common-law right. It exists alone by virtue of the local statute of the state of Iowa. If the statute be regarded as penal in its character, or was designed to regulate the course of proceeding in that state, it has no extra-territorial force. *Bank v. Kidder*, 12 Vt. 469, 471.

Be this as it may, the statute makes such payments recoverable back only when made for intoxicating liquors sold in violation of " the chapter." This evidently refers to section 1532, of the act which prohibits the sale of such liquors in the state. The evidence given at the trial on the issues covered all the sales, and showed clearly that the sales were not made in Iowa, nor were any of the payments made in that state. It was an Illinois contract, and the payments were made in Illinois. It would, therefore, be trifling with the lower court to reverse the cause on account of the counter-claim, when, under the principles announced in the first paragraph of this opinion, the defendant's counter-claim must ultimately fail.

It follows that the judgment of the circuit court is affirmed. All concur.