# Lee *v.* Boyd.

*Trover for Conversion of Municipal Bonds.*

1. *Negotiable bonds; illegal sale, or pledge as collateral security.*—Negotiable bonds belonging to an infant, and in the hands of his guardian, if pledged as collateral security by the guardian for an illegal purpose, of which the pledgee has notice, may be recovered from him by action in the name of the infant; and if the transaction was an absolute sale, the purchaser having notice of the illegal purpose, though it be binding

between the parties as *in pari delicto*, he can not claim protection against the infant, as the real owner of the bonds.

   2.  *Contract for sale or purchase of "cotton futures."*—A contract for the sale or purchase of "cotton futures," no actual delivery of any cotton being contemplated or intended, but only a staking of "margins" to cover the difference in price, is an illegal transaction, contrary to public policy, and void; and neither party can thereby acquire any rights as against an innocent third person.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by H. D. Boyd, as guardian of Sallie Stricklan, an infant, against Charles S. Lee and W. P. Mount, to recover damages for the alleged conversion by the defendants of certain municipal bonds issued by the city of Troy under authority of law; and was commenced on the 13th January, 1887. The record does not show what pleas were filed; but there was a judgment on verdict against the defendant Lee, and in favor of the defendant Mount. "On the trial," as the bill of exceptions states, "the plaintiff's evidence showed that the bonds in controversy belonged to said Sallie Stricklan, an infant, and were deposited during the year 1883, by one Higgins, who was then her guardian, with said C. S. Lee, as collateral to secure the sum of $500, borrowed from said Lee to be used by him in a joint purchase with said Higgins of one thousand bales of cotton, in what is generally known as *Futures;* that no cotton was at the time intended for delivery, but they were to depend on the rise or fall in cotton whether they made or lost in the transaction; that $1,000 was the amount required as a bonus, and the $500 so borrowed was used by Lee in the purchase of said futures on their joint account. The bonds were worth at the time fifty cents on the dollar of their face value; and the plaintiff's evidence tended to show that said Lee, when he loaned said $500 to Higgins, knew that Higgins held the bonds as guardian of said infant. The evidence tended to show, also, that said Lee, after he got possession of said bonds, borrowed money from said W. P. Mount, and deposited said bonds with him as collateral security; that Lee repaid said loan, and the bonds were returned to him. The bonds sued for were issued under an act of the General Assembly approved December 3d, 1880, and so purported to be on their face; were payable to bearer, in sums of $50 and $100, and were negotiable; and they were properly described in the complaint. None of said bonds have ever been returned to Higgins, Boyd, or Sallie Stricklan, nor to

[Lee v. Boyd.]

any one for them. The defendants' testimony tended to show that, during the summer 1883, Higgins came to Lee, and proposed they buy one thousand bales of cotton, subject to the rules of the New York Cotton Exchange; that Lee assented to the proposal; that Higgins, not having $500, his part of the bonus, sold to Lee, for $500, ten bonds of the city of Troy, seven of which are the bonds here sued for, and said $500 was applied by Lee, at the request of Higgins, to pay his half of said bonus; and that at the time of said purchase by Lee, and at the time he paid the $500 as afore-said, Higgins was the holder of said bonds, claiming them as his own, and Lee knew nothing about any claim or ownership by Sallie Stricklan to any of said bonds."

"This being all the evidence in the case," the court charged the jury that, "although Lee may have purchased the bonds from Higgins, and paid the money for them, without any knowledge of plaintiff's right or claim to them; yet, if he knew that the purchase-money was to be applied to the purchase of what is known as 'cotton futures,' he could not be protected as a purchaser for value without notice, although the bonds were negotiable." The defendants' excepted to this charge, and also to the following, which was given on request of the plaintiff: (2.) "If the jury believe from the evidence that Lee, when he let Higgins have the money, knew that Higgins intended to use it in the purchase of 'cotton futures,' then the contract is void." The defendants also excepted to the refusal of the following (with other) charges, which were asked by them in writing: (1.) "If the jury believe the evidence, they must find for the defendants." (3.) "If the jury believe from the evidence that Lee paid Higgins fifty cents on the dollar for the bonds, though he did so with knowledge of the fact that he intended to invest the same in 'cotton futures'; and further, that Lee bought in good faith, and without any knowledge of Miss Stricklan's claim or right to the bonds; then they must find for the defendant Lee." (4.) "Unless the evidence satifies the minds of the jury that Lee and Mount were jointly interested in the first alleged conversion of said bonds, then they must find a verdict for said defendants, although they may believe from the evidence that Mount received said bonds from the witness Curtis, as collateral security for the payment of said Curtis' note, some time in July, 1884."

The charges given, and the refusal of the charges asked, are now assigned as error.

[Lee v. Boyd.]

GARDNER & WILEY, and JOHN GAMBLE, for appellant, cited *Blackmon v. Lehman, Durr & Co.*, 63 Ala. 547; 1 Wait's A. & D. 688; *Murray v. Lardner*, 2 Wall. 110; *Spooner v. Holmes*, 102 Mass. 503; 5 Phila. Penn. 34; *Kenney v. Childs*, 4 Greene (Iowa), 416; *Lehman, Durr & Co. v. Strassburger*, 2 Woods, C. C. 554; Dewey on Future Delivery, 165; *Round-tree v. Smith*, 108 U. S. 269 ; *Larkins v. Eckwurzel*, 42 Ala. 322.

M. N. CARLISLE, *contra*, cited *Hawley v. Bibb*, 69 Ala. 51; *Manning v. Manning*, 8 Ala. 138; *Sallmarsh v. Tuthill*, 13 Ala. 390; *Ivey v. Nicks*, 14 Ala. 564; *Perkins v. Savage*, 15 Wend. 412; *White v. Bass*, 3 Cush. 448; *Cannon v. Bryce*, 3 B. & Ald. 179; 2 Mees. & W. 434.

SOMERVILLE, J.—The action is brought for the alleged conversion by the defendant, Lee, of certain bonds of the city of Troy, Ala., which the plaintiff, Boyd, claims as the property of a minor child, of whom he is the legal guardian. These bonds, according to the plaintiff's version of the case, had been *pledged* by one Higgins, as collateral security for money advanced by Lee, to be invested in a joint purchase of what is commonly known as "cotton futures." According to the defendant's version of the testimony, however, they had been *sold* to him for fifty cents in the dollar, the proceeds to be applied, by Higgins' direction, to pay his half of the *bonus* required for the purchase of such futures, "subject to the rules of the New York Cotton Exchange."

If the contract of loan, on the one hand, or of sale, on the other, as the case may be, is illegal, the plaintiff is entitled to recover, even though the bonds in question be regarded as negotiable instruments; for, in the former alternative, the pledge of the bonds, made to secure an illegal loan, would be equally void with the loan itself; and in the latter, if the contract of sale be illegal, although binding between the immediate parties as being *in pari delicto*, the purchaser can not be protected as a *bona fide* holder, so far as concerns the plaintiff, who is the true owner of the securities sued for in the action.

The purpose to which the money was to be devoted was an illegal enterprise, being a bet or wager on the future price of cotton, which, the evidence tends to show, was to be promoted by the defendant on joint account with Higgins,

[Lee v. Boyd.]

who procured from him the money, whether by *pledge or sale* of the bonds, for the furtherance of this express design. The evidence, if believed, shows that the transaction was a mere speculation in cotton "futures"; that no cotton was actually intended to be delivered, but the whole speculation was dependent upon the future rise or fall in the price of cotton, as governing the loss or gain of the venture —a simple staking of "margins," in other words, to cover the difference in price. The evidence fails to show what were the rules of the New York Cotton Exchange controlling such transactions, and we can not assume to know what they were. The case must stand upon the evidence contained in the record.

In *Hawley v. Bibb*, 69 Ala. 52, it was decided by this court, that a bill given for money to be advanced to the maker by the payee, to enable him to engage in buying and selling such futures in the State of New York, was a mere contract founded on a loan or advance of money to bet, as a wager, on the future price of cotton, and as such would be illegal and void between the immediate parties, and purchasers with notice, as a contract made in violation of the public policy. The rule, accordingly, is now generally established by authority, that where an optional contract for the purchase or sale of property is made, and there is no intention on the one side to deliver, or on the other to actually buy, but merely that the difference in price should be settled according to the market fluctuation—the rise or fall in the value of the commodity—the contract is a mere wager or bet upon the future price of the commodity, and as such is reprobated by the law, and void for illegality. *Bigelow v. Benedict*, 70 N. Y. 202; s. c., 26 Amer. Rep. 573; *Gregory v. Wendell*, 30 Mich. 337; s. c., 33 Amer. Rep. 390; *Kirkpatrick v. Bonsall*, 72 Penn. St. 155; *Fareira v. Gabell*, 89 Penn. St. 89; *Yerker v. Solomon*, 18 N. Y. (11 Hun), 473; *Grizewood v. Blane*, 11 C. B. 526; s. c., 73 E. C. L.5 26; *Irvin v. Williar*, 110 U. S. 499; Bishop on Contracts, § 534.

The enterprise itself being a cotton gambling transaction, it becomes immaterial whether the bonds were *pledged or sold* by Higgins to Lee, provided the parties had in contemplation, at the time, a joint investment for their mutual benefit—Lee knowing that the money was intended to be used in furtherance of it. If the money was loaned, or advanced for this express purpose, the contract of borrowing would

be illegal, and the pledge of the bonds to secure it equally so, as in violation of the public policy.—Bishop on Contract, § 535; *Raymond v. Leavitt*, 46 Mich. 447; s. c., 41 Amer. Rep. 170; *Comley v. Hillegaas*, 94 Penn. St. 132; s. c., 39 Amer. Rep. 774; *Milner v. Patton*, 49 Ala. 423; *Hananer v. Doane*, 12 Wall. 342; *Shepherd v. Reese*, 42 Ala. 329; *DeLeon v. Trevino*, 30 Amer. Rep., *note*, pp. 107-112; 1 Daniel Neg. Instr. (3d Ed.), § 200; 2 Randolph Com. Paper, § 535; *Morgan v. Groff*, 5 Denio, 364; s. c., 49 Amer. Dec. 273.

The case of *White v. Yarbrough*, 16 Ala. 109, is entirely unlike this case. There, money had been advanced by one of the payees of a note, to a third person, at the request of the maker, in payment of a debt due by such maker for an illegal wager, the illegal transaction being then complete, not in contemplation, and the parties to it having no common interest.

So, on the other hand, if the bonds were purchased by Lee for the purpose of aiding Higgins to raise the money to engage in such illegal enterprise, in the fruits of which the seller and buyer were jointly interested, the latter knowing the uses to which the proceeds were to be devoted, the sale would be illegal, and although binding on the seller and buyer, as an executed illegal sale, the defendant, as buyer, could not claim to be a *bona fide* purchaser, or innocent holder, so as to cure the infirmity of title arising from the fact that the bonds did not belong to Higgins, but to the ward of the plaintiff, for whose benefit this suit is brought. The illegality of the transaction would taint the title of the buyer, so as to destroy the *bona fides* of the purchase, as fully as actual fraud or want of consideration would do. *McCall v. Rogers*, 77 Ala. 349; *Saltmarsh v. Tuthill*, 13 Ala. 390; *Ramsdell v. Morgan*, 16 Wend. 574.

Under these principles, the court did not err in any of its rulings, so far as the appellant is concerned. The jury having found for the defendant Mount, we do not consider the rulings affecting him alone.

It is sufficient to say, that the charge given *ex mero motu* by the court was correct; and there was no error in giving charge numbered two requested by the plaintiff, nor in refusing charges numbered one and three requested by the defendant. The fourth charge is abstract in referring to the testimony of one Curtis, which is not set out in the bill of exceptions. The other rulings we need not discuss fur-

[Moseley v. Moseley.]

ther than to observe that they were either erroneous, mis-
leading, or prejudicial only to Mount, who does not appeal.
Affirmed.