W. A. McVEAN, Respondent, v. R. L. WEHMEIER, Appellant.*

In the Kansas City Court of Appeals, December 31, 1923.

1. CONTRACTS: Gaming: Validity of Contract Determined by Law of State in Which Contract was Entered Into. In a suit on a note given in settlement for balance due under a contract, made in Missouri, whereby it was the intention of the parties to speculate on the future price of corn on the Chicago market, *held* that the ques-

tion of its validity was properly determinable according to laws of Missouri.

2. **ACCOUNT STATED: Defense That Transactions Out of Which Plaintiff's Claim Arose Were Illegal and Void Held Available to Defendant.** An account stated presupposes that the transactions upon which it is based were not illegal, and in an action upon a note, it is *held* that the defense that the transactions out of which the claim arose, and for which the note was given, were illegal and void, was available.

3. **CONTRACTS: Gaming: Where Either Party to Contract for Future Delivery of Grain Had no Intention of Effecting a Sale the Contract is Void.** At common law buying and selling, or pretended buying and selling of grain or other commodities, ostensibly for future delivery were not illegal as gambling transactions, unless both parties thereto intended they should not be bona-fide transactions, but mere speculations in the rise and fall of the market, and under sections 3572 and 3573, Revised Statutes 1919, such transactions are illegal where either of the parties had no intention of effecting a sale or purchase, the purpose of the statute being to declare unlawful the practice of dealing in "futures" and to preclude gambling by such means.

4. ————: ————: **Where Entire Consideration of Note Became Tainted with Illegality, no Recovery Could be Had Thereon.** Where one of the transactions of an account stated was that defendant was paid cash by a witness for privilege of "putting" one of the lots of corn, included in the note sued on, and that witness had no intention of delivering the corn nor defendant of receiving it, plaintiff, the assignee of such contract, was not entitled to recover thereon, as the entire consideration for the note became tained with illegality.

5. **INSTRUCTIONS: Refusal of Instruction Submitting Illegality of Consideration for Contract Where it Was not Intention Thereunder to Deliver Corn Sold as Future, Held Error.** In an action on a note where there was evidence that the same was given in settlement of certain transactions involving the future price of corn, which at time same was contracted for was not intended to be delivered, *held* it was error to refuse an instruction to find for defendant, if either party did not intend to deliver such corn, as its refusal precluded defendant's defense of illegality of consideration from being submitted to the jury.

*Headnote 1. Gaming, 27 C. J., Section 266; 2. Accounts & Accounting, 1 C. J., Section 311; 3. Gaming, 27 C. J., Section 271; 4. Gaming, 27 C. J., Section 332; 5. Gaming, 27 C. J., Section 360.

Appeal from Circuit Court of Moniteau County.—*Hon. Roy D. Williams*, Special Judge.

REVERSED AND REMANDED.

*F. J. Quigley* and *Embry & Embry* for respondent.

*S. C. Gill* and *W. C. Irwin* for appellant.

ARNOLD, J.—This is an action on a promissory note executed by defendant in favor of plaintiff in the sum of $3980, dated Tipton, Mo., July 16, 1920. The petition refers to the note by exhibit and pleads payment and credit thereon of $169,43, as of December 10, 1920.

The amended answer alleges that the only consideration for the note was the difference between the contract price of certain lots of corn pretended to be sold to defendant by plaintiff, and one lot pretended to be sold to him by one Preston Hays who afterwards assigned his contract to plaintiff; that said transactions were gambling contracts, in violation of sections 3572-73, 3577, and other sections of article 8, chapter 24, Revised Statutes 1919; that at the time of said transactions there was no intention on the part of plaintiff to deliver, nor on the part of defendant to receive said corn; that it was the intention of all the parties to speculate on the rise and fall of the market on such corn; that the differences were to be paid in money without delivery of the combodity, and in fact no corn was delivered, offered for delivery, nor received. Further, the answer sets out the following items which combined make up the amount of the said note:

May 17,   5,000 bushels of July  Corn at $1.76 per bu.
May 18, 20,000 bushels of July  Corn at  1.76 per bu.
May 19, 10,000 bushels of July  Corn at  1.70 per bu.
May 21, 10,000 bushels of July  Corn at  1.58 per bu.
June 24, 10,000 bushels of Sept. Corn at  1.67 per bu.
June 25, 10,000 bushels of July  Corn at  1.67 per bu.

July 5, 20,000 bushels of Sept. Corn at 1.63½ per bu.

June 2, 5,000 bushels of Sept. Corn at 1.64¼ per bu.

(The last named item constituted the deal with Hays.)

The note executed by defendant in settlement of the balance found to be due plaintiff is the subject of this suit.

The reply was a general denial. The cause was tried before a special judge on change of venue, and to a jury, resulting in a verdict for plaintiff in the sum of $4249.34. Judgment was entered in accordance with the verdict. After motion for new trial was overruled, defendant appealed to this court.

The record shows the parties hereto are residents of Tipton, Moniteau County, Mo., and the transactions, including the execution of the note took place there. Plaintiff is a farmer and stock man and at the time of the filing of this suit he was the owner of 600 acres of land, 200 head of cattle and other stock, and was a dealer in grain transactions. Defendant owns an elevator in Tipton and is engaged in the grain and feed business. Plaintiff gave defendant a cow for the first of the transactions between them, cash for others, and cash was paid him for the one in which Hays figured. It appears in all these transactions that defendant was paid for the privilege plaintiff and Hays had of "putting" within a specified period said lots of corn to defendant; that plaintiff and Hays would not be liable for anything except what they paid defendant for the privilege; that settlements were to be made on quotations of the Chicago market, and that plaintiff had the privilege of naming the day on which he would deliver the corn within the contract period.

Defendant testified he had no intention of receiving the corn, that there was no understanding between him and plaintiff that the corn would be delivered, while plaintiff's version is that the corn was to be delivered at Chicago, if delivery were required. Defendant further

testified he executed the note in suit and that it was, his intention at the time to pay same when due and that the reason he did not pay it was that plaintiff owed him $460. No counterclaim for this amount was filed, however, defendant urged lack of consideration for the note because the transactions upon which it was based were illegal. Plaintiff's version is that since delivery was to be made in Chicago, if delivery were required, the validity of the transactions is governed by the laws of the State of Illinois, while defendant claims the transactions were Missouri contracts and governed by Missouri laws.

It is also insisted by defendant that the Hays transaction, was shown by the evidence to have been a gambling contract and not to be performed in any other State than Missouri. The testimony of Hays tends to support this contention and defendant's position is that the Hays transaction, being a gambling contract, and it being one of the items making up the total of the note sued on, the entire consideration for the note is thereby tainted with the vice of gambling. The court excluded evidence offered by defendant tending to show that plaintiff had engaged in the operation of a "bucket shop" at Tipton, where transactions in "futures" upon grain, hogs, cattle and other commodities were carried on, not alone with defendant but with numerous other persons.

Defendant urges here that the court erred in accepting the view of plaintiff that the contracts in controversy were to be construed in accordance with the laws of the State where the last act in completion thereof was to be performed, and that the giving of instructions to that effect was error.

It is proper to note in this connection that the Illinois law was neither pleaded nor offered in evidence, though it is urged by plaintiff, that in the absence of proof of the Illinois law, the matter will be governed by the rules of the common law applicable thereto. "The place of performance is the place of the contract." [2 Parsons on Contracts (8 Ed.), p. 583.]

As stated, this is the rule applicable to cases involving the question of specific performance. But this is not such a suit. Here we are dealing with the question of the validity of the contract, and not the mode of the performance thereof. It is undisputed that the contract was entered into in the State of Missouri. The general rule applicable is laid down as follows in 9 Cyc. p. 672:

The validity of the contract, that is, the question of whether the contract is a legal or illegal one, is judged by the law on the subject in the State or country in which the contract is entered into, the general rule being that "a contract good where made is good everywhere, and a contract invalid where made is invalid everywhere."·

We find no conflict between the decisions in Illinois (Rountree v. Baker, 52 Ill. 241, 4 Am. Rep. 597; Mumford v. County, 50 Ill. 370, 99 Am. Dec. 525, and cases cited) and the decisions in this State (Johnston v. Gawtry, 83 Mo. 339, Kerwin v. Doran, 29 Mo. App. 397; Liebig v. Ins. Co., 276 Mo. 118). So that on the question of the validity of the contract, we must hold, under these authorities that the contract in question is a Missouri contract, and its validity is properly determinable according to the laws of this State.

We think it may be accepted without question that the several transactions which took place during the months of May and June, 1920, became an account stated, when the parties agreed as to the amount due plaintiff from defendant, as represented by the note in suit. It is said in 1 R. C. L. 209; 46 Mich. 447, 9 N. W. 525 (Raymond v. Leavitt): "An account stated presupposes that the transactions upon which it is based were not illegal." We hold, therefore, that the defense set up by the answer, to-wit, that the transactions out of which plaintiff's claim arose and for which the note was given, were illegal and void, was available to defendant if supported by the facts in evidence. At common law transactions of such character as those carried on between plaintiff and defendant, i. e., buying and selling, or pretended buying or selling,

of grain or other commodities, ostensibly for future delivery, were not illegal, as gambling transactions, unless both parties thereto intended they should not be bona-fide transactions, but mere speculations in the rise and fall of the market.    [Edwards Brokerage C. v. Stevenson, 160 Mo. 516, 61 S. W. 617; Connor v. Black, 119 Mo. 126, 24 S. W. 184; Atwater v. Brokerage Co., 147 Mo. App. 436, 126 S. W. 823.]

But in Missouri the common-law rule on the subject has been changed by statute.  Section 3572, Revised Statutes 1919 (Sec. 4780, R. S. 1909), provides as follows:

"All purchases and sales or pretended purchases and sales, or contracts and agreements for the purchase and sale, of the share of stocks or bonds of any corporation, or petroleum, provisions, cotton, grain or agricultural products whatever, either on margin or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold, and all the buying or selling or pretended buying or selling of such property on margins or on optional delivery, when the party selling the same, or offering to sell the same, does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, or when the party buying any of such property or offering to buy the same does not intend actually to receive the full amount of the same if purchased are hereby declared to be gambling and unlawful, and the same are hereby prohibited."

Section 3573 (sec. 4781, R. S. 1909) provides that it shall not be necessary in order to commit the offense defined by section 3572 that both the buyer and seller shall agree to do any of the acts prohibited by that section. These statutes are construed in the case of Elmore-Schultz Grain Co. v. Stonebraker, 202 Mo. App. 81, 92, where the court cites with approval the holding in Smith v. Bailey, 209 S. W. 945, 948.  In both these cases, it is held that it is unnecessary for the plaintiff to have known

of defendant's intention to gamble, in order to render the demand sued on not recoverable. The contracts were void, even though it was the intention of .only one of the parties thereto to gamble. [Connor v. Black, supra; Grain Co. v. Stonebraker, supra; Smith v. Bailey, supra, and cases therein cited] It is clear the purpose of the statute was to declare unlawful the practice of dealing in "futures" and to preclude gambling by such means. Operations where either of the parties had no intention of effecting a sale, or purchase, of the commodity in question come within the purview of the statute.

The testimony of Preston Hays is to the effect that he paid defendant cash for the privilege of "putting" one of the lots of corn included in the note in question, and that the witness had no intention of delivering the corn. The defendant's testimony is that he had no intention of receiving it. As stated above, the contract made by Hays was assigned to plaintiff herein. Under the ruling in the Stonebraker case, already cited, the entire consideration for the note became tainted with illegality and if such is the case no recovery may be had thereon. The evidence is substantial that defendant had no intention of receiving the corn pretended to be purchased by him.

It is urged that the trial court erred in refusing defendant's instructions numbered 1, 2, 5 and 9, but as these are all of the same general tenor, a discussion of only one of them needs be indulged. Instruction No. 1 refused by the court is as follows:

"The jury are instructed that if you find and believe from the evidence in this case that the only consideration moving from plaintiff, W. A. McVean, to the defendant, R. L. Wehmeier, for the note sued on in this case was the amount claimed by plaintiff to be due him from defendant on certain transactions for the sale of corn (to) defendant by plaintiff and the witness, Preston Hays, mentioned in the evidence; and that if you further find and believe from the evidence that at the

time of such agreements for the sale of such corn were entered into between plaintiff and defendant and between the witness, Preston Hays, and defendant, that plaintiff and witness Hays, or either of them, did not intend to deliver such corn contracted to be sold to defendant, then your verdict must be for plaintiff.''

The testimony was such that the jury well may have found for defendant under the law, as above enunciated, if the instructions had properly declared the law. We think the court erred in refusing to give the instructions enumerated above, on behalf of defendant, and that the instructions given, as to the defense of illegality, did not properly submit the case to the jury. The judgment should therefore be reversed and the cause remanded for a new trial consistent with the views above expressed. It is so ordered. All concur.