(79 App. Div. 67.)

BRISTOL v. MENTE et al.

(Supreme Court, Appellate Division, Second Department.    January 30, 1903.)

1. SALES—EVIDENCE—SUFFICIENCY.
    Evidence examined in an action for breach of a contract to sell to plaintiff all the linen bags owned by defendants and stored in a certain warehouse, at 20 cents per bag, and *held* to sufficiently establish the making of the contract. .

2. STATUTE OF FRAUDS—SUFFICIENCY OF WRITING—SINGLE INSTRUMENT.
    In order to satisfy the statute of frauds, it is unnecessary that the terms of the contract of sale be contained in a single instrument.

3. SAME—LETTERS TO THIRD PERSONS.
    The terms of the contract of sale may be derived from letters to third persons connected with the transaction. and the statute of frauds will be complied with.

4. SAME—ORAL ACCEPTANCE—SUFFICIENCY.
    If an owner of goods signs an agreement to sell, and delivers it to the buyer, and he agrees by parol to buy on the terms mentioned in the agreement, there is a binding contract. which can be enforced against the seller.

5. PRINCIPAL AND AGENT—INSTRUCTIONS TO AGENT—COMPLIANCE.
    Instructions to agent authorized to sell goods, "All sales to be net cash," were not disregarded by the agent where, on the buyer's offering to make a deposit when the contract of sale was completed, he told him he could wait until actual delivery of the goods.

6. STATUTE OF FRAUDS—PARTIAL DELIVERY
    Where one about to purchase goods received a part conditionally for examination, and afterwards told the seller's agent he would take the whole lot, including the part delivered, he "accepted and received" a part of the goods, so as to take the case out of the statute of frauds.

7. TENDER—SUFFICIENCY.
    A tender by a purchaser of goods of the larger portion of the price in gold or legal-tender notes, and the balance in United States or national bank notes, was good, where no objection was made.

8. SALES—REBATE.
    Where a purchaser of part of a lot of linen bags afterwards bought the balance, and the seller's letter to his agent had stated, "In case any one party would take the remaining total lot, the price would be 20 cents for all said party had bought," and the purchaser had paid 25 cents for the part first bought, he was entitled to the rebate.
    Jenks, J., dissenting.

Appeal from trial term, Kings county.

Action by Lavius F. Bristol against Eugene W. Mente and another.    From a judgment for plaintiff, and from an order denying a new trial, defendants appeal.    Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD. and HIRSCHBERG, JJ.

Dean Emery (Frederic R. Kellogg, on the brief), for appellants.
Robert L. Luce, for respondent.

GOODRICH, P. J.    The defendants composed the firm of Mente & Co., of New Orleans.    In December, 1899, the firm purchased of the United States government a large lot of linen bags, which had

¶ 2. See Frauds, Statute of, vol. 23, Cent. Dig. §§ 262, 263.

been damaged at the Brooklyn navy yard by fire and acids. The defendants stored them at the warehouse of Pell & Pickford, on Warren street, New York City. In February, 1900, the defendants advertised the bags for sale; and Mr. Campion, a broker, called upon E. W. Mente, one of the defendants, at the Astor House, and asked for a sample of the goods, and was told by him that he could go to Pell & Pickford's and get a sample. Mente promised to pay Campion one cent per bag, brokerage. He testified that he told Campion that, if he took any customer to Pell & Pickford, Mr. Pell had "authority to take the money and deliver the bags." Campion testified that Mente gave him the bags to sell, and instructed him to report all transactions to Pell & Pickford; that all transactions were to go through Pell & Pickford; and that this was the only lot of linen bags which the defendants placed in his hands for sale. Thereafter Campion called upon the plaintiff and showed him the sample, and the plaintiff ordered from Pell & Pickford 500 bags, to be sent to him on memorandum for examination, and later bought 6,000 others, which were paid for to Pell & Pickford at the price of 25 cents per bag. The following correspondence ensued between Campion and the defendants:

"New York, Feby. 27, 1900.

"Mr. E. W. Mente—Dear Sir: L. F. Bristol, No. 42 Lispenard St., is interested in the linen goods, & it is very likely will use the entire lot. I introduced him to Mr. Pell, & after inspecting them, had 500 delivered, & would like 1,000 more, but P. & P. do not want to take any further responsibility until they hear from you. This is a reliable party, been in business for 25 years or more, & rated in Dunn 10 to 20 M, good credit. He also gave a dozen good houses as references. The price named was 25 cts., or for the lot 20 cts., net cash. I suggested that they be put on memo. until your return, & then you can fix the matter with him satisfactory.

"Very respectfully,        J. T. Campion,
"Care Jas. Thompson & Co., 12 White St.

"P. S. Please let me hear from you by next mail."

"New Orleans, March 6th, 1900.

"J. T. Campion, Esq., c/o Jas. Thompson & Co., 12 White Street, New York City—Dear Sir: Your favor of the 27th ult. has remained unanswered on account of same being addressed to the writer personally instead of to the firm, and only came into my hands to-day owing to my absence from here. I am very sorry this happened, but, as you will see, under the circumstances it is not our fault. Now, in reference to the linen bags, would say that my understanding with you was that you were to sell same at 25c. each in any lots you could, but that, in case any one party would take the remaining total lot, the price should be 20c. for all said party had bought. You will understand that this arrangement cannot go on indefinitely, and if the gentleman you mentioned, namely, Mr. L. F. Bristol, is agreeable to take the whole lot at 20c., he must make up his mind in the course of a week or ten days, as we are in negotiations with several parties who have samples of these goods, and also have bought small quantities of same. I do not expect to be in your city much before April 1st. Please let us hear from you anything that may turn up, and kindly address all letters to the firm.

"Yours truly,        E. W. Mente.
"All sales to be nett cash."

"New York, March 8, 1900.

"Mr. E. W. Mente—Dear Sir: L. F. Bristol, 42 Lispenard, is interested in these linens, and has had 3,000 delivered up to the present time. I would like to see you on your arrival in reference to same.

"Respectfully, &c.,        J. T. Campion."

"New York, Mch. 9th, 1900.

"Messrs. Mente & Co., New Orleans, La.—Dear Sirs: Your favor of the 6th inst. received, and in reply would state that L. F. Bristol has had delivered, & paid for to Pell & Pickford, 3,500 bags, and will probably control the entire lot. Will advise you more fully when the transaction is completed.

"Yours truly,                                           J. T. Campion."

"New Orleans, March 12th, 1900.

"J. T. Campion, Esq., c/o Jas. Thompson & Co., 12 White Street, New York—Dear Sir: We hereby confirm our wire to you this morning, reading, 'Not having heard definitely from you have given other parties option on bags, do nothing, await letter,' which we sent before your favor of the 9th inst. was received. We have entered into negotiations with parties here in reference to these bags, and therefore wish you would hold off offering any more of them till our Mr. Mente will be in your city again, which will be perhaps in about ten days or two weeks. Mr. Bristol had ample time to make up his mind whether he wanted them or not, and perhaps missed it by not taking them when he had the chance.

"Yours truly,                                           Mente & Co."

"[Telegram.]   New Orleans, La., Mch. 12, 1900

"J. T. Campion, care Jas. Thompson & Co., 12 White Street: Not having heard definitely from you have given other parties option on bags do nothing await letter.                                           Mente & Co."

"[Telegram.]   Received at Main office, 253 Broadway, New York, March 12.
"Dated New Orleans, La., 12.

"To Pell and Pickford, 12 Warren St.; New York: Don't sell linens written to-day fully.                                           Mente & Co."

"New Orleans, March 12th, 1900.

"Messrs. Pell & Pickford, 121 Warren Street, New York City—Gentlemen: We herewith confirm our wire of even date, reading as follows, 'Don't sell linens written to-day fully,' and would say that we are about to make disposition of these linen bags. Therefore do not dispose of any more at a lower price than 30c. each till our Mr. Mente will come to your city again, in the course of ten days or two weeks.

"Yours truly,                                           Mente & Co."

It may be noted in passing that while the defendants, in their letter of March 12th, say that the first telegram of March 12th was sent before the receipt of Campion's letter of the 9th, Mente testified that both telegrams of that date were sent after the receipt of such letter. On Friday, March 9th, Campion showed the plaintiff the defendants' letter of March 6th, and the two went to Pell & Pickford's store, and spent that and the following day in examining the bags. At the close of such examination, and on the 10th, as the plaintiff testified, he asked Pell how many bags there were, and was told about 30,000, and he told Pell that he would take all the bags, including the 500 which he had on memorandum, and "offered to pay a deposit to bind the transaction. No deposit was accepted. Mr. Pell said it was unnecessary," and that, as Saturday was a short day, he would commence delivery on Monday morning, or whenever the plaintiff was ready. Mr. Campion testified that the plaintiff told Pell that he would take the whole lot of bags, and asked him "if it was necessary to make a deposit. Mr. Pell said it was not; that he had dealings with him, and he was satisfied that everything was all right. That was all that was said. Nothing else was done about the matter, except that he [Bristol] agreed to take them [the bags which re-

mained in store] on the following Monday or Tuesday. We two went down on the following Monday or Tuesday to get the goods." At this time Pell told them he had wired the defendants, "About to deliver bags to Bristol await your instruction," and had received a wire from him not to deliver the bags. Mr. Pell was not a witness, and we must assume that the interviews were correctly stated by the plaintiff and Campion. The plaintiff tendered Mr. Pell $6,000, and demanded the bags, but delivery was refused. There was evidence sufficient to establish that there remained unsold about 25,500 of the bags, and that the damage to the plaintiff by their nondelivery was 10 cents per bag, and the jury rendered a verdict for $2,549.72.

The defendants contend: First, that no contract was ever entered into between the parties for the purchase of the goods; second that, even if one was made, it was invalid, under the statute of frauds; third, that no sufficient tender was made; and, fourth, that there was error in the admission of evidence as to values and damages, and in directing the jury to allow plaintiff's claim for rebate.

1. There is abundant evidence that the parties entered into a bargain for the sale of the entire lot at 20 cents per bag. The defendants employed Campion as a broker to sell the entire lot at 20 cents a bag, or portions at 25 cents per bag, and afterwards wrote him a letter embodying these terms, procured him a sample, and referred him to Pell & Pickford, through whom all transactions were to be made, and delivery to be had. On Saturday, the 10th, after examination of the goods, the plaintiff told Pell that he would take the whole lot, including the 500 which he had on memorandum. Pell accepted the offer, waived present deposit, and agreed to commence delivery on Monday or Tuesday following. The jury has found on sufficient evidence, that there was such a bargain.

2. The contract, being for the sale of chattels for the price of $50 or more, must have been in writing, subscribed by the defendants, or the plaintiff must have received part of the goods, or at the time of the contract have paid part of the purchase money. 2 Rev. St. (9th Ed.) p. 1886. We must not lose sight of the object of the statute. Mr. Greenleaf says:

"The rules of evidence contained in this celebrated statute are calculated for the exclusion of perjury, by requiring in the cases therein mentioned some more satisfactory and convincing testimony than mere oral evidence affords." 1 Greenl. Ev. (15th Ed.) § 262.

With this reason in mind, we examine the letters and telegrams of the defendants, addressed to their broker, Campion, to ascertain whether the terms of the contract are in writing. If they are, the purpose and reason of the statute are not infringed. It is unnecessary to cite authority that the terms need not be in a single instrument, and may be derived from letters addressed to a third person connected with the transaction. In the leading case of Justice v. Lang, 42 N. Y. 493, 497, 1 Am. Rep. 576, the court said:

"Comyn, in his work on Contracts (page 2), says: A simple contract, or contract by parol, is defined in our law books to be 'a bargain or agreement voluntarily made upon good consideration, between two or more persons capable of contracting, to do, or forbear to do, some lawful act.' * * *

And 'six things appear necessary to concur: (1) A person able to contract. (2) A person able to be contracted with. (3) A thing to be contracted for. (4) A good and sufficient consideration, or quid pro quo. (5) Clear and explicit words to express the contract or agreement. (6) The assent of both the contracting parties.' "

It is evident that all of these particulars appear in the defendants' letters, except the assent of the contracting parties. The vendor was the defendants' firm. It made an offer of the bags through its letter to a broker. The intending vendee was the plaintiff, whose name was known to, and appears in the letter of, the defendants. The thing to be contracted for was the lot of linen bags belonging to the defendants, in the warehouse of Pell & Pickford. It nowhere appears that the defendants owned any other bags. The consideration was 25 cents per bag for a part, or 20 cents per bag for the entire lot. The words used in the defendants' letter to express this agreement were clear and explicit. Surely in all the required particulars of the terms of the contract referred to in Justice v. Lang, supra, the written papers subscribed by the defendants are complete.

The next question is whether or not the plaintiff accepted the terms, and made a contract with the defendants or with their authorized agent. In Mason v. Decker, 72 N. Y. 595, 28 Am. Rep. 190, it was held (page 598, 72 N. Y., 28 Am. Rep. 190) that:

"If the purchaser signs an agreement to buy, and delivers it to the seller, and he agrees by parol to sell upon the terms mentioned in the paper signed by the purchaser, there is a binding agreement which can be enforced against the purchaser."

The converse of the proposition is equally true, and applicable to the present case. See, also, Sanborn v. Flagler, 9 Allen, 474.

Mr. Browne, in his treatise on the Statute of Frauds (section 321a), says:

"Where the thing contracted to be sold is defined, specified, and ascertained at the time of the purchase, proof of the fact that the buyer then agreed to buy that particular thing, and consequently thereby finally recognized and identified it as the particular thing he was to get, will, in general, be a sufficient proof of an acceptance by him. This was clearly brought out in the case of Cusack v. Robinson, 1 Best & S. 308."

The evidence is clear that Pell was the agent of the defendants to complete the sale, and that the plaintiff agreed to buy the bags on the exact terms mentioned in the defendants' letter, and it may be added that Pell accepted the plaintiff's agreement of purchase, so that the minds of the parties met in the transaction on all the terms of the contract. The plaintiff was then and there ready to take delivery, and offered to pay the price, but Pell said that the goods could not be delivered till the following business day. Pell had clear authority to complete the sale, and he did complete it at that time. The words at the foot of the letter of March 6th, "All sales to be nett cash," were not disregarded by Pell or the plaintiff. The latter offered to pay, and Pell simply postponed actual payment of the price until the actual delivery of the bags. This was not inconsistent with his instructions from the defendants. Besides, it appears that at the time of the bargain on the 10th the plaintiff had received 500 bags on a memorandum, by which, I understand, under the evidence, was meant that he had re-

ceived these bags conditionally, to see whether he would or would not purchase them. On the 10th these 500 bags were in his possession, and not paid for. On that day he told Pell that he would take the whole lot, including the 500 lot. This lot he had not previously agreed to take, and had not paid for. But his agreement to take all the bags included the 500, and so the plaintiff did at that time actually "accept and receive" a part of the whole lot under his contract of that date to purchase the entire lot. It also appears that Pell said he would wire the defendants that he had sold the bags, and he did wire the defendants, apparently on Saturday, that he was about to deliver the bags to Bristol. This confirms the evidence that he had accepted the plaintiff's offer and had completed the sale. Campion also wrote the defendants on the 12th, informing them that the plaintiff would accept the goods. The court instructed the jury very clearly on the subject:

"It is for you to say, upon this testimony with reference to the relations between Pell and the defendant, and Campion and the defendant, what the extent of their agency was with respect of these goods. Did Pell have the right, by reason of any authority he had from the defendant, to say that these goods could be held there until Monday without a delivery, and that there need be no cash paid until that time? If he did, then the defendant is bound by it. There is no proof in this case that there was to be any cash paid until the delivery, but the cash was to be paid upon delivery. The delivery, according to the testimony of these people, was to be upon the Monday following. That was the day when the plaintiff said he would take this whole lot of goods, and Campion insists that he had a right, under this letter of March 6th, to sell these goods to Bristol at that price, which he says was consummated upon that day; that is, upon the Saturday."

The jury, under this charge, and on sufficient evidence, have found that the defendants had constituted Pell their agent for the sale, and for the incidents attendant thereon. The acceptance by Pell of the plaintiff's offer completed the contract of sale. The delivery and the payment on delivery were but incidents of the transaction, which was complete on the acceptance by Pell of the plaintiff's offer to purchase on the terms named by the defendants.

3. There was a sufficient tender of the price. Pell telegraphed the defendants that he was about to deliver the bags, but, acting under the telegram which he received in answer from the defendants, dated March 12th, two days after the sale, and which he told the plaintiff was received by him on the 13th, refused to deliver the bags to the plaintiff, and afterwards tendered the price. It appears that $5,550 of the tender was in gold or legal-tender notes, and $450 in United States or national bank notes, the description of which is not very clear; but, as no objection to the character of the tendered notes was made by Pell, the defendants were not in a situation to object. Pell could have recovered the notes in payment, and, as he made no objection to them, the tender remains good. Besides, the verdict is for $2,549.72. Assuming that the jury founded their verdict as to the amount of the damages on the lowest estimate of value (that is, 10 cents per bag), the award would be for 25,497 bags. The tender was $6,000, which would be the price of 30,000 bags. Defendants only claim that $400 of the tender was not in legal-tender notes, and, even if this fact was proven, there remained $5,600 of legal-tender notes, which was more than sufficient to pay for 25,497 bags.

4. There is no error in the admission of the evidence as to the value of the bags. The witnesses were shown to be acquainted with the value of such goods. One of them bought and sold a portion of them, and the weight to be given to their testimony was a matter to be determined by the jury.

5. The claim for rebate was well and properly stated by the court, when it said:

"Then, in addition to that, there is another element in this case, if you get to the question of damages, and that is as to this matter of rebate. The proof is here that the plaintiff had had a quantity of these bags, for which he had paid twenty-five cents; and his claim is that, if he took the entire lot, he was entitled to have a rebate of five cents apiece on those he had paid for, and he says he has paid for all he got. You have a right to take that into account in judging the amount of damages by reason of this rebate."

It appeared that, before the plaintiff accepted the entire lot of the bags, he had received a portion of them, for part of which he had paid 25 cents per bag, and part of which he held on memorandum. The defendants letter of March 6th to Campion uses the words, "In case any one party would take the remaining total lot, the price should be 20c, for all said party had bought." It is clear that the charge of the learned justice was based on, and in accord with, this condition.

We are of opinion that there was evidence justifying the verdict on the ground that there was a contract for the sale of the bags on the terms named by the defendants; that the contract was in writing, as required by the statute of frauds; that there was a sufficient tender of the price; that, as the plaintiff purchased the entire lot, he was entitled to the rebate; and that the amount of damages fixed by the verdict was established. The exceptions to the charge are not tenable.

The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur, except JENKS, J., who dissents.