THORN et al. v. BROWNE.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1919.)

No. 5083.

1. FRAUDS, STATUTE OF ⬉115(3)—CONTRACTS—SIGNATURE—COTTON FUTURES ACT.

Under Cotton Futures Act Aug. 11, 1916, § 4 (Comp. St. § 6309d), providing that "each contract of sale of cotton for future delivery * * * shall be in writing plainly stating, or evidenced by written memorandum showing, the terms of such contract, * * * and shall be signed by the party to be charged, or by his agent in his behalf," a broker's seller's slip or buyer's slip, duly signed "by the party to be charged" in accordance with the rules of the exchange, is sufficient to prove a valid sale or purchase, and it is not essential that the contract be signed by both parties, or that both the seller's and buyer's slips shall be introduced in evidence.

2. STATUTES ⬉188, 225¾—CONSTRUCTION—USE OF WORDS OR PHRASES WITH ESTABLISHED MEANING.

When a legislative body selects and uses in a statute words or clauses which had previously acquired by judicial interpretation or common consent and use a well-understood meaning and legal effect, the legal presumption is that it intended that they should have that meaning and effect in the statute.

3. STATUTES ⬉241(1)—CONSTRUCTION—PENAL STATUTES.

Courts may not lawfully extend the denunciation of a penal statute to a class of persons excluded from its effect by its plain terms.

4. EVIDENCE ⬉69—PRESUMPTIONS—REGULARITY OF COURSE OF BUSINESS.

Under a rule of a cotton exchange requiring a seller to deliver to the buyer a signed seller's slip and to furnish a corresponding buyer's slip, which shall be signed and returned by the buyer, the introduction in evidence of one of such slips raises a legal presumption that the corresponding slip in the same terms was also executed.

5. FRAUDS, STATUTE OF ⬉116(9)—COTTON FUTURES—CONTRACT DISCLOSING PRINCIPAL'S NAME.

Where contracts for purchase and sale of cotton futures are made between brokers on an exchange, where brokers only can make such contracts, Cotton Futures Act Aug. 11, 1916, § 4 (Comp. St. § 6309d), does not require that the contracts should show the names of the principals for whom they act.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. BROKERS ⚫85(1)—ACTION AGAINST PRINCIPAL—EVIDENCE.
    Evidence of purchases and sales of cotton futures, including the sell-
    er's and buyer's slips, *held* competent in an action by the brokers against
    their principal to recover a balance due on the transactions.

7. JURY ⚫37—IMPAIRMENT OF RIGHT—REVIEW—ISSUES DETERMINABLE ONLY
   BY JURY.
    Where, because of the erroneous exclusion of evidence offered by plain-
    tiffs to prove the contract sued on, which rendered recovery impossible,
    they introduced no evidence on a second issue of fact, upon which they
    had a constitutional right to a jury trial, such issue cannot be determined
    by the appellate court to sustain a judgment for defendant entered upon
    a directed verdict.

8. APPEAL AND ERROR ⚫856(3)—DETERMINATION OF CAUSE—ERROR AS TO
   GROUNDS OF DECISION—DIRECTED VERDICT.
    Where a verdict is directed on limited, but untenable, grounds, it may
·   not be sustained on other grounds, unless it is clear beyond doubt that
    the new grounds could not have been obviated, if they had been called to
    the attention of the defeated party, and he had been given an opportunity
    to meet them by evidence and argument. ·
    Carland, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western
District of Arkansas; Frank A. Youmans, Judge.

Action at law by Charles B. Thorn and another, copartners as
Thorn & Maginnis, against Fred Browne. Judgment for defendant,
and plaintiffs bring error. Reversed.

Certiorari denied 249 U. S. ——, 39 Sup. Ct. 494, 63 L. Ed. ——.

Ira D. Oglesby, of Ft. Smith, Ark., and Joseph E. Johnson, of At-
lanta, Ga. (Oglesby, Cravens & Oglesby, of Ft. Smith, Ark., on the
brief), for plaintiffs in error.

James B. McDonough, of Ft. Smith, Ark., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and MUN-
GER, District Judge.

SANBORN, Circuit Judge.   The plaintiffs, Thorn & Maginnis, a
partnership, were cotton brokers and members of the New Orleans
Cotton Exchange, and the defendant Browne was a resident of Sebas-
tian county, Ark.   They sued him for the balance of an account of
· $23,215, which they alleged he owed them on the purchase and sale of
2,000 bales of cotton, and for commissions on such purchases and sales,
which they bought and sold for him on his telegraphic orders between
January 24 and February 2, 1917, subject to section 5 of the United
States Cotton Futures Act (Act Aug. 11, 1916, c. 313, 39 Stat. 476
[Comp. St. § 6309e]) and the by-laws, rules, and conditions of the
New Orleans Cotton Exchange.   By his answer the defendant denied
every allegation of the plaintiffs' complaint, except an averment there-
in that the plaintiffs had in their possession $6,760 of his money on
February 1, 1917. · He alleged that any contracts of purchase or sale
the plaintiffs made on his orders were illegal and criminal under the
Cotton Futures Act, that the alleged transactions were gaming trans-
actions, and that he was entitled to recover of the plaintiffs $6,760,
for which he pleaded a counterclaim in his answer.

The trial proceeded in this way:   Over the objections of the defend-

ant that the testimony was incompetent, irrelevant, and immaterial, and that the only competent evidence of the purchases and sales were the alleged written contracts required by the Cotton Futures Act, and with leave to the defendant to move to strike out the evidence, the plaintiffs proved, by telegraphic orders that they received from Browne, that he ordered them to buy and sell the 2,000 bales of cotton to be delivered in the following May, and they proved by the testimony of witnesses who knew the facts that they did buy and sell these 2,000 bales of cotton for Browne in accordance with the telegraphic orders he had sent them, that by contracts, settlements, and ring settlements they paid for the cotton which they bought for Browne the amounts charged to him in their account with him, and credited him with the amounts they received from him and from the sale of cotton, all of which he ordered them to sell on February 1, 1917. They proved by the testimony of one of the members of their firm that they sent to Browne a statement of the account between them, showing the amounts of their purchases and sales for him, and the balance for which they sued, that after he received this account he admitted to one of the members of the plaintiffs' firm that he sent the telegraphic orders, and that the account was correct. When the trial had reached this point, the plaintiffs produced, identified, and offered in evidence the sellers' slips or contracts of sale of the 2,000 bales of cotton which they bought for Browne, which slips were signed by the respective brokers who sold these 2,000 bales of cotton to them, and they also offered in evidence the buyers' slip of the 2,000 bales which they sold for Browne, which was signed by the brokers who bought them, and they offered to prove by the testimony of witnesses that they signed and delivered to each of the parties from whom they received one of the sellers' slips a buyers' slip containing the same words as the corresponding sellers' slip, except that the word "bought" in the former was in place of the word "sold" in the latter, and the bought slips were signed by them and ran in favor of the brokers who sold the cotton, and that they delivered to the brokers who gave them the bought slip a corresponding sellers' slip mutatis mutandis which was signed by them. To the introduction of these sellers' slips and of the bought slip signed by the parties respectively to be charged by the plaintiffs and their principal, Browne, defendant objected on the ground that they were invalid and were incompetent evidence, because they were not signed by both parties to the transactions out of which they arose, and because the corresponding buyers' slips and sellers' slips signed by the plaintiffs were not offered in evidence, and they objected to the parol evidence offered to the effect that the latter were delivered to the sellers and purchaser respectively by the plaintiffs when the respective transactions were made, on the ground that it was incompetent, because the written slips signed by both parties to the transaction were the only competent evidence of the transactions of purchase and of sale, and the court sustained all these objections, ruled out these slips, held that the contracts required by the Cotton Futures Act could not be proved without the introduction of the sellers' slips and the buyers' slips relating to each transaction, ruled out all evidence subsequently offered, and on motion struck out all evidence

previously offered, on the ground that it was all irrelevant and immaterial, in the absence of the buyers' and sellers' slips of each transaction, and then, as no evidence remained in the case, instructed the jury to return a verdict for the defendant, before the latter offered any evidence.

[1] Although many minor questions are suggested, the ruling which threw this case was that a broker's sellers' slip or buyers' slip, duly signed, was insufficient to prove a valid contract of sale or purchase of cotton futures under sections 4 and 5 of the Cotton Futures Act, unless that contract was signed by both the parties to the transaction, or the corresponding buyers' or sellers' slip was also introduced in evidence. The portion of the statutes by which this issue must be determined is the first sentence of section 4 of the act, which reads in this way:

"That each contract of sale of cotton for future delivery mentioned in section 3 of this act shall be in writing plainly stating, or evidenced by written memorandum showing, the terms of such contract, including the quantity of the cotton involved and the names and addresses of the seller and buyer in such contract, and shall be signed by the party to be charged, or by his agent in his behalf." Comp. St. § 6309d.

It is provided by rule 47 of the New Orleans Cotton Exchange that:

"It shall be the duty of the seller, on the day on which transactions in contracts take place, or at not later than 9 a. m. on the following day, to furnish a contract or slip, and. deliver his own already signed, and the opposite one in blank to the buyer; the latter shall then sign his contract, or slip, and return it to the seller."

Testimony was offered that this rule was complied with in the case. of each of the purchases. made by the plaintiffs for Browne and in the case of the sale they made for him. Here are copies of two of the sellers' slips offered in evidence at the trial below:

"New Orleans, La., Jan. 25, 1917.

"Sold to Thorn & Maginnis, of New Orleans, La., and agreed to deliver them subject to the by-laws, rules and conditions of the New Orleans Cotton Exchange and subject to the United States Cotton Futures Act, § 5:

| Bales Cotton. | Delivery. | At Cents Per Pound for Middling. |
|---|---|---|
| Three Hundred | May | 16.84 |

"Silvan Newburger & Co.
"Silvan Newburger & Co. of New Orleans, La."

"New Orleans, La., Jan. 25, 1917.

"C. P. Ellis & Co., Cotton Exchange Bldg., sold to Thorn & Maginnis, of New Orleans, La., and agreed to deliver them subject to the by-laws, rules and conditions of the New Orleans Cotton Exchange and subject to the United States Cotton Futures Act, § 5:

| Bales Cotton. | Delivery. | At Cents Per Pound for Middling. |
|---|---|---|
| One hundred | May | 16.70 |
| Three " | " | 16.83 |
| Two " | " | 16.83 |
| One " | " | 16.90 |
| Two " | " | 16.81 |
| One " | " | 16.84 |

"C. P. Ellis & Co., of New Orleans, La."

Is a writing or written memorandum signed by both the parties to a contract of sale of cotton futures, or two writings or written memoranda of the contract, one signed by each of the parties to the transaction, indispensable to the proof of a writing or written memorandum "signed by the party to be charged or by his agent in his behalf," under section 4 of the Cotton Futures Act?

It is a general rule of law that a written contract signed by both parties to it is valid, and that a written contract between two parties signed by one of them is likewise valid and enforceable against him who signed it by the other party to it, who accepts and seeks to enforce it, although he has never signed it. If Congress had intended to require every transaction in the sale of cotton futures to be evidenced by a writing or by written memoranda signed by both parties to it, it would naturally have required the writing of which it treats to be signed by the parties to it or their agents in their behalf, and not "by the party to be charged or by his agent in his behalf" only. This provision of the statute states clearly and without ambiguity that the contract must be signed by the party to be charged or his agent in his behalf. The selection of one party is the exclusion of the other, and the strong legal presumption is that the Congress intended what it so plainly declared, that the statute ought to be held to mean what it expresses, and that the signature of no one but the party to be charged is requisite to it to evidence a valid contract. Brun et al. v. Mann, 151 Fed. 145, 157, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154; Grainger & Co. v. Riley, 201 Fed. 901, 904, 120 C. C. A. 415, 418; United States v. Alamogordo Lumber Co., 202 Fed. 700, 706, 121 C. C. A. 162, 168.

[2] When a legislative body selects and uses in a statute words or clauses which before the enactment of the law had acquired by judicial interpretation or common consent and use a well-understood meaning and legal effect, the legal presumption is that it intended that they should have that meaning and effect in the statute it enacts. Butler v. United States (D. C.) 87 Fed. 655, 661; United States v. Trans-Missouri Freight Association, 58 Fed. 67, 7 C. C. A. 15, 71, 24 L. R. A. 73. For many years before the Cotton Futures Act was passed, the statutes of fraud of England and of many of the states of this nation had provided that certain classes of contracts specified therein should be void unless they were evidenced by a writing or by a written memorandum "signed by the party to be charged or his agent," and long before the passage of the act under consideration it had become the universal and well-understood judicial construction of these statutes that the signature of the party to be charged alone was sufficient to evidence a valid contract thereunder, and that the other party to the contract, although he had not signed it, could enforce it in the courts against him who had signed it. Browne on Statute of Frauds (1895) § 395; Wood on Statute of Frauds (1884) p. 764; 20 Cyc. 272, and note 78; Walker v. Jameson, 140 Ind. 591, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. and note at pages 681, 694, 696, 49 Am. St. Rep. 222; 23 Cent. Digest, 2286, §§ 244, 245; 9 Decennial Digest 1906, p. 1422, § 115 (3) and § 115 (4); Lee v. Vaughan's Seed Store, 101 Ark. 68, 73, 141 S. W. 496, 37 L. R. A. (N. S.) 352; Vance v. Newman, 72

Ark. 359, 80 S. W. 574, 105 Am. St. Rep. 42; In re Pettingill & Co. (D. C.) 137 Fed. 143; Bowers v. Whitney, 88 Minn. 168, 92 N. W. 540; Bristol v. Mente, 79 App. Div. 67, 80 N. Y. Supp. 52, and 178 N. Y. 599, 70 N. E. 1096; Justice v. Lang, 42 N. Y. 493, 1 Am. Rep. 576; Harriman v. Tyndale, 184 Mass. 534, 69 N. E. 353; Borie v. Satterthwaite, 180 Pa. 542, 37 Atl. 102, 103.

Congress took this well-adjudicated clause, "signed by the party to be charged or by his agent," and inserted it in the Cotton Futures Act in the form "signed by the party to be charged, or by his agent in his behalf," and it is incredible that it intended thereby that this clause should have a meaning so radically different from that which it then had as to require the writing or memorandum to be signed by others than that one of the parties so clearly designated by the law.

[3] And when the fact is considered that, if this section 4 be construed to mean that the writing or memorandum must be signed by both parties to the contract, one who makes or takes a contract of sale of cotton futures signed by the party to be charged only becomes guilty of the penal offense denounced by section 14 of the Cotton Futures Act (Comp. St. § 6309o), there remains no doubt that the meaning of the clause under consideration may not lawfully be extended by construction, so as to require every writing or written memorandum of a contract for the sale of cotton futures to be signed by both parties to it. For courts may not lawfully extend the denunciation of a penal statute to a class of persons excluded from its effect by its plain terms, even though in their opinion the acts of the latter are as heinous as those of the members of the class whose deeds the statute penalizes. United States v. Wiltberger, 5 Wheat. 76, 96, 5 L. Ed. 37; United States v. Brewer, 139 U. S. 278, 280, 11 Sup. Ct. 538, 35 L. Ed. 190; United States v. Field, 137 Fed. 6, 8, 69 C. C. A. 568, 570; United States v. Ninety-Nine Diamonds, 139 Fed. 961, 964, 72 C. C. A. 12, 2 L. R. A. (N. S.) 185. The conclusion is that the sellers' slips and the buyers' slips signed by the parties respectively to be charged by the plaintiffs and their principal, Browne, did not fail to comply with the Cotton Futures Act, and were not inadmissible evidence of the contracts of sale because they were not also signed by the plaintiffs, or because the corresponding buyers' slips and sellers' slips signed by the plaintiffs were not also offered in evidence.

[4] There is another reason why the sellers' slips and the buyers' slip signed by the respective parties to be charged were admissible in evidence and would have proved the purchases and sale in the absence of countervailing evidence, even if the Cotton Futures Act had required the execution of a buyers' slip and a sellers' slip for each transaction, as does rule 47 of the Cotton Exchange, and that is that the introduction of one of these corresponding slips under such a requirement raises the legal presumption that the corresponding slip in the same terms mutatis mutandis was also executed and delivered, a presumption which ought to and will prevail in the absence of proof to the contrary. Hawes v. Forster, 1 Moody & Robinson, 368, 371, 374; Parton v. Crofts, 16 C. B. Reports (N. S.) 11, 13, 14, 21; Benjamin on Sales (5th Ed.) 289, 297, 303. And inasmuch as, when one of these

slips is offered in evidence, the legal presumption is that the corresponding slip expressed the same terms of sale as those specified in the slip offered (see authorities, supra), and the plaintiffs were competent witnesses to prove the fact that they signed slips corresponding, to those offered in evidence and delivered them to the other parties to the respective contracts at the times of the respective transactions, it was error to exclude their testimony to that effect.

[5, 6] Counsel for the defendant urges other, but less serious, objections to the slips which were offered in evidence. He contends that they are insufficient under the Cotton Futures Act: (1) Because, while they specified May delivery, they do not specify the year of the delivery, but they are dated in January and February, 1917, and there can be no doubt that the year of the delivery intended by the parties was 1917. (2) Because the names and addresses of the buyers and sellers are not set forth in the slips, but the buyers and sellers in the contracts under consideration were the New Orleans brokers, whose names and addresses appear on the slips. None but members of the Cotton Exchange could buy or sell cotton futures thereon. The statement of their names and addresses was no less a compliance with the statutes because they bought or sold for undisclosed principals, and the statute nowhere requires the disclosure in the contracts of the names or addresses not disclosed to opposing parties of the principals or others for whom the brokers make contracts the burden of which they personally assume. (3) Because under article 5, page 10, Treasury Regulations No. 36, which provides that no contract shall be deemed to comply with section 5, section 6a, or section 10 of the United States Cotton Futures Act (Comp. St. §§ 6309e, 6309g, 6309k), if it contain any provision by reference or otherwise inconsistent or in conflict with any requirement of section 5, section 6a, or section 10 of the Cotton Futures Act. These slips contain agreements of sale, purchase, and delivery of cotton futures "subject to the by-laws, rules and conditions of the New Orleans Cotton Exchange, and subject to the United States Cotton Futures Act," and section 3, rule 1 (15), of the Cotton Exchange provides in effect that verbal contracts "shall have the same standing, force and effect as written ones (if notice in writing conforming to the requirements of section 4 of the United States Cotton Futures Act), if such contract shall have been given by one of the parties thereto to the other party during the day on which such contract was made or the next business day thereafter." But a verbal contract may lawfully precede a written contract in the purchase or sale of cotton futures under the act of Congress, and these slips provide that the contracts they evidence shall comply with both the Cotton Futures Act and the rules of the Exchange. There is nothing in the rules of the Exchange cited which prohibits or is inconsistent with such a compliance. The legal presumption is that these contracts were made in accordance with the provisions of both. All that the Cotton Futures Act requires is that the contracts of sale shall be evidenced by written memoranda signed by the parties to be charged. These contracts are so evidenced, and even if they were verbal contracts before they were evidenced by a writing or the written memoranda, yet, when

they were evidenced thereby within a day of two after the bids were made which preceded the contracts they were as complete a compliance with the Cotton Futures Act as they would have been if the written memoranda had been made a few hours earlier. Nothing in contradiction of or inconsistent with section 5 of the act, or with the compliance therewith is found in the rules of the Cotton Exchange, the buyers' and sellers' slips, or in the sales or purchases they evidenced. (4) Because some of the slips—for example, the sellers' slip signed by C. P. Ellis & Co.—evidenced several sales, the third and sixth of which, charged in the Ellis slip, one of the plaintiffs testified were bought by them for the defendant, and his counsel argues that this slip was not a compliance with the act, and that the testimony selecting these items of purchase was incompetent, because the slip itself fails to identify the purchases evidenced thereby bought for Mr. Browne; but, as has already been said, brokers buying and selling for undisclosed persons on the Cotton Exchange are the buyers and sellers within the meaning of the Cotton Futures Act, and are not required thereby to disclose in their slips the names or addresses of those for whom they buy or sell. This is not an action to enforce these contracts. It is an action for a balance of an account for purchasing and selling cotton futures for the defendant, and the testimony of the plaintiffs as to what particular parts of the cotton futures which they made valid contracts to buy or to sell they bought or sold in obedience to defendant's orders was clearly competent and material against him.

The conclusion of a consideration of all the objections to the slips offered in evidence is that they complied with the requirements of the United States Cotton Futures Act and that the court fell into an error (1) in refusing to admit them in evidence; (2) in refusing to admit in evidence parol evidence that the plaintiff signed and delivered a corresponding buyers' slip to the sellers and a corresponding sellers' slip to the buyers who signed the respective slips offered in evidence; (3) in ruling out of the case practically all of the other evidence offered by the plaintiffs, a large part of which was competent and material, on the erroneous view that the slips offered in evidence failed to evidence contracts in compliance with the Cotton Futures Act; (4) and especially in ruling out the parol evidence in explanation of the defendant's telegram "Stop ten seventeen twenty and ten seventeen fifteen" and other trade terms.

[7] Passing from these slips and the rulings in the trial of the case, counsel for the defendant also contends that, notwithstanding the errors which have been mentioned, the judgment for the defendant should be affirmed, because the transactions out of which the claim of the plaintiffs arose were gambling transactions. Whether they were or not was an issue of fact before the jury. The seventh amendment to the Constitution reads:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined, in any court of the United States, than according to the rules of the common law."

"This," said the Supreme Court in Parsons v. Bedford, 3 Pet. 433, 446, 448, 7 L. Ed. 732, "is a prohibition to the courts of the United

States to re-examine any facts tried by a jury in any other manner. The only modes known to the common law to re-examine such facts, are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable, or the award of a venire facias de novo by an appellate court for some error of law which intervened in the proceedings." This rule of law has often been reaffirmed in later cases. Barreda et al. v. Silsbee, 21 How. 146, 166, 167, 16 L. Ed. 86; Justice v. Murray, 76 U. S. (9 Wall.) 274, 277, 19 L. Ed. 658; Chicago, Burlington & Quincy R. R. v. Chicago, 166 U. S. 226, 246, 17 Sup. Ct. 581, 41 L. Ed. 979; Capital Traction Co. v. Hof, 174 U. S. 1, 8, 9, 19 Sup. Ct. 580, 43 L. Ed. 873. The plaintiffs accordingly were entitled to a jury trial of the question of fact whether or not the transactions regarding the purchases and sales were gambling transactions. They have been deprived of that trial, because the court below, under an erroneous view of the law upon another question, made it impossible for the plaintiffs to recover below, even if the transactions were not gambling transactions, and ruled out all the evidence they offered. The instruction to the jury to return a verdict for the defendant was made after these erroneous rulings, in the midst of the attempt of the plaintiffs to introduce their evidence, when they had not rested their case, although they had ceased to offer evidence because under the rulings of the court no amount of evidence in their favor on the question, gambling transactions vel non, or on any other issue in the case, could secure a judgment in their favor. In this state of the case the issue, gambling transactions or not, is not triable or determinable by this court, and the plaintiffs are entitled to a new trial of this entire case by a jury. This court may not lawfully affirm a judgment below on the ground that the evidence conclusively showed the defense that the transactions on which the plaintiffs relied were gambling transactions, when all the plaintiffs' evidence was excluded on an erroneous ground which made it useless for them to introduce their evidence on that issue. Baker v. Kaiser, 126 Fed. 317, 319, 320, 61 C. C. A. 303. There is nothing in the record to show that they would not have introduced persuasive and substantial evidence that the transactions were not gambling transactions, if the erroneous rulings of the court had not rendered the introduction of such evidence futile.

[8] The only theory upon which counsel for the defendant could possibly sustain the judgment is that the errors in the trial were not prejudicial to the plaintiffs. In the case in hand the verdict was not directed on the ground that the transactions relative to the purchases and sales of cotton futures were gambling transactions. The court had overruled a demurrer to the complaint and held that it stated a good cause of action. During the trial no objection or suggestions that the transactions were gambling transactions was made by counsel or the court, and the ground on which the verdict was directed was that the sellers' slips and the buyers' slips failed to comply with the requirements of the Cotton Futures Act. So it is that the rules on the introduction of evidence and the direction of the verdict were founded on a limited and untenable ground, and counsel for the defendant

seeks to sustain it on another ground. The rules of law on this subject are:

First. That when a verdict is directed on limited, but untenable, grounds, it may not be sustained on other grounds, unless it is clear beyond doubt that the new grounds could not have been obviated, if they had been called to the attention of the defeated party and he had been given an opportunity to meet them by evidence and argument at the time the direction was made. Peck v. Heurich, 167 U. S. 624, 17 Sup. Ct. 922, 42 L. Ed. 302; Baker v. Kaiser, 126 Fed. 317, 319, 320, 61 C. C. A. 303.

Second. When a court has directed a verdict upon a specific, but untenable, ground, after the defeated party had been permitted to introduce all the legal evidence he offered and has rested his case, and it is clear beyond doubt, from a bill of exceptions which contains all the evidence, that the evidence would not sustain any other verdict, an appellate court may lawfully affirm the verdict on some new or other ground. And the reason that it may do so in such a case is that, when the defeated party has been permitted to introduce all the legal evidence he offered and has rested his case at the trial, he has thereby admitted, and in that way has estopped himself from denying, that he can do no more to overcome the objection that the evidence is insufficient to sustain a verdict in his favor. Bank of Havelock v. Western Union Telegraph Co., 141 Fed. 527, 526, 72 C. C. A. 580, 4 L. R. A. (N. S.) 181, 5 Ann. Cas. 515, and cases there cited.

The case at bar does not fall under the second rule, nor under its reasons or conditions. The plaintiffs were not permitted to introduce the legal evidence they offered, but all of it was excluded, and the erroneous rulings of the court made it useless for them to introduce evidence on the issue of gambling transactions or not. It is not clear beyond doubt that if the plaintiffs had been permitted to introduce the evidence that was ruled out, and the objection that the evidence that the transactions were not gambling transactions was insufficient had been called to their attention before the verdict was delivered, they could not or would not have obviated that objection by other testimony. The case therefore falls under the first rule, and the question whether or not the record in this case conclusively proved that the transactions were gambling transactions is not reviewable by this court, and the judgment below must be reversed.

And, finally, if that question were reviewable, the record did not sustain a finding that the pleadings and evidence in the case so conclusively show that the transactions were gambling transactions that that issue was not for the jury, and that because, first, the court below adjudged on a general demurrer to the complaint that the latter stated a good cause of action; in other words, that it did not show that the transactions were gambling transactions; that ruling was not changed at the trial or before the verdict was directed, and it cannot now be questioned by the defendant for he has sued out no writ of error; second, because all the evidence offered was ruled out on the objection or motion of the defendant, and he is now estopped from denying that there is no evidence whatever in the case because that is the fact,

therefore there is, and was when the verdict was directed, no evidence in the case that the transactions were gambling transactions; and, third, if the complaint and the excluded evidence could be lawfully considered by this court at this time on this question of gambling transactions or not, they would not so conclusively prove that the transactions were gambling transactions as in our opinion to warrant the withdrawal of that question from a trial by a jury.

Let the judgment be reversed, and let the case be remanded to the court below, with instructions to grant a new trial.

CARLAND, Circuit Judge (dissenting). I cannot concur in the views of the majority. The plain case as shown by the record appears to me as follows:

Thorn & Maginnis sued Browne to recover the amount paid out by them at the request of defendant and for his use in and about the purchase and sale of 2,000 bales of cotton on the New Orleans Cotton Exchange and commissions for their services in buying and selling such cotton. The case, after issue joined, came on for trial, and the plaintiffs offered to show: That upon the telegraphic request and upon the account and risk of the defendant they purchased cotton on the New Orleans Cotton Exchange for May delivery as follows:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| January 25, 1917 | | | 200 | bales at | 16.83 | cents per pound | | |
| " | " | " | 400 | " | 16.84 | " | " | " |
| " | 27 | " | 200 | " | 17.06 | " | " | " |
| " | 29 | " | 400 | " | 17.08 | " | " | " |
| " | " | " | 300 | " | 16.88 | " | " | " |
| " | 30 | " | 200 | " | 16.93 | " | " | " |
| " | 31 | " | 300 | " | 17.13 | " | " | " |

That on February 1, 1917, at the telegraphic request of defendant, they sold for his account and risk 2,000 bales of cotton on the New Orleans Cotton Exchange for May delivery at the price of 14 cents per pound. That in the purchase and sale of said cotton plaintiffs paid out and advanced for the defendant the sum of $29,675, and earned in commissions the sum of $300. That no part of the same had been paid, except the sum of $6,760. Plaintiffs further offered to show that, at the time of the purchase of the cotton above mentioned, each vendor executed and delivered to plaintiffs a memorandum in writing, of which the following is a sample:

"New Orleans, La., Jan. 25, 1917.

"C. P. Ellis & Co., Cotton Exchange Building, sold to Thorn & Maginnis, of New Orleans, La., and agreed to deliver them subject to the by-laws, rules and conditions of the New Orleans Cotton Exchange and subject to the United States Cotton Futures Act, § 5.

| Bales Cotton. | Delivery. | At Cents per Pound for Middling. |
|---|---|---|
| One hundred | May | 16.70 |
| Three " | " | 16.83 |
| Two " | " | 16.83 |
| One " | " | 16.90 |
| Two " | " | 16.81 |
| One " | " | 16.84 |

"C. P. Ellis & Co., of New Orleans, La."

That at the time the 2,000 bales of cotton were sold the purchasers executed and delivered to plaintiffs a memorandum in writing, of which the following is a copy:

"Office of Thorn & Maginnis, 209 Varieties Place.

"New Orleans, La., Feb. 1, 1917.

"Bought from Messrs. Thorn & Maginnis, of New Orleans, La., and agreed to receive from them subject to the by-laws, rules and conditions of the New Orleans Exchange and subject to the United States Cotton Futures Act, § 5:

| Bales Cotton. | | Delivery. | At Cents per Pound for Middling. |
|---|---|---|---|
| Twenty | hundred | May | 14. cts. |
| One | " | " | 14.20 |
| One | " | " | 14.25 |
| One | " | July | 16.10 |
| One | " | May | 14.45 |
| Three | " | July | 16.10 |
| One | " | " | 16.10 |
| One | " | May | 14.80 |
| One | " | May | 14.50 |

"Airey & Stouse, of New Orleans, La."

The trial court excluded all evidence relating to the purchase and sale of the cotton for the reason that the purchases and sales were made in violation of the Cotton Futures Act (39 Stat. 476). This ruling resulted in a directed verdict for the defendant. Counsel for plaintiffs claim that the exclusion of the evidence offered and resulting verdict was error. Counsel for defendant contends that the ruling of the trial court was right for the following reasons:

That the contracts of purchase and sale were made in violation of the Cotton Futures Act, in the following particulars: (a) The memorandums offered were only a memorandum signed by the vendee in the sale of the cotton, and memorandums signed by the vendors in the purchase of the cotton, there being no signature of the vendor in the sale of the cotton or by the vendees in the purchase of the cotton. (b) That if the memorandums offered can be held to be the contract referred to in section 3 of the Cotton Futures Act (Comp. St. § 6309c), they did not specify the time of delivery. (c) They were not signed by the party to be charged, or by his agent in his behalf. (d) The names and addresses of the seller and buyer were not mentioned. (e) The memorandums were in violation of the regulations of the Treasury Department. (f) The purchase and sale of cotton under the facts offered to be shown were criminal offenses in which the plaintiff participated as aiders and abettors, and for that reason they cannot recover for disbursements made or commissions earned.

The following sections of the Cotton Futures Act are relied on by the counsel for defendant:

"Sec. 3. That upon each contract of sale of any cotton for future delivery made at, on, or in any exchange, board of trade, or similar institution or place of business, there is hereby levied a tax in the nature of an excise of two cents for each pound of the cotton involved in any such contract.

"Sec. 4. That each contract of sale of cotton for future delivery mentioned in section 3 of this act shall be in writing plainly stating, or evidenced by written memorandum showing, the terms of such contract, including the quantity of the cotton involved and the names and addresses of the seller and

buyer in such contract, and shall be signed by the party to be charged, or by his agent in his behalf. If the contract or memorandum specify in bales the quantity of the cotton involved, without giving the weight, each bale shall, for the purposes of this act, be deemed to weigh five hundred pounds.

"Sec. 5. That no tax shall be levied under this act on any contract of sale mentioned in section 3 hereof if the contract comply with each of the following conditions:

"First. Conform to the requirements of section 4 of, and the rules and regulations made pursuant to, this act.

"Second. Specify the basis grade for the cotton involved in the contract, which shall be one of the grades for which standards are established by the Secretary of Agriculture, except grades prohibited from being delivered on a contract made under this section by the fifth subdivision of this section, the price per pound at which the cotton of such basis grade is contracted to be bought or sold, the date when the purchase or sale was made, and the month or months in which the contract is to be fulfilled or settled: Provided, that middling shall be deemed the basis grade incorporated into the contract if no other basis grade be specified either in the contract or in the memorandum evidencing the same."

## Subdivision 7 of section 5 provides as follows:

"The provisions of the third, fourth, fifth, sixth, and seventh subdivisions of this section shall be deemed fully incorporated into any such contract if there be written or printed thereon, or on the memorandum evidencing the same, at or prior to the time the same is signed, the phrase 'Subject to United States Cotton Futures Act, Section 5.'"

"Sec. 11. That the tax imposed by section 3 of this act shall be paid by the seller of the cotton involved in the contract of sale, by means of stamps which shall be affixed to such contracts, or to the memoranda evidencing the same, and canceled in compliance with the rules and regulations which shall be prescribed by the Secretary of the Treasury." Comp. St. § 6309l.

"Sec. 12. That no contract of sale of cotton for future delivery mentioned in section 3 of this act which does not conform to the requirements of section 4 hereof, and has not the necessary stamps affixed thereto, as required by section 11 hereof shall be enforceable in any court of the United States by, or on behalf of, any party to such contract or his privies." Comp. St. § 6309m.

"Sec. 14. That any person liable to the payment of any tax imposed by this act who fails to pay, or evades or attempts to evade the payment of such tax, and any person who otherwise violates any provision of this act, or any rule or regulation made in pursuance hereof, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than $100 nor more than $20,000, in the discretion of the court; and, in case of natural persons, may, in addition, be punished by imprisonment for not less than sixty days nor more than three years, in the discretion of the court." Comp. St. § 6309o.

The contention that the trial court was right in directing a verdict on the ground that the evidence offered showed a gambling transaction will not be considered, as the trial court made no ruling in relation thereto. The defendant, it is true, pleaded this defense, but none of the objections to the introduction of evidence were based on this ground, and the trial court made no reference thereto in any of its rulings, but, on the contrary, ruled in the exclusion of evidence with reference to the Cotton Futures Act.

Coming to the Cotton Futures Act, I may say that, as the present action is not one to enforce the contracts for the purchase and sale of cotton, section 12 of that act above quoted has no application. The serious question presented by the record is this: Laying aside the ques-

tion of gambling, did the evidence offered show that the plaintiffs knowingly engaged in an illegal business or transaction in the purchase and sale of the cotton? If so, plaintiffs cannot recover, and the exclusion of the evidence was not error. Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, 28 L. Ed. 225; Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819, supra; In re Green, 7 Biss. 338, Fed. Cas. No. 5,751; Melchert v. Tel. Co. (C. C.) 3 McCrary, 521, 11 Fed. 193; Bartlett v. Smith (C. C.) 13 Fed. 263; Raymond v. Leavitt, 46 Mich. 447, 9 N. W. 525, 41 Am. Rep. 170; Cobb v. Prell (C. C.) 15 Fed. 774; Steers v. Lashley, 6 T. R. 61; Everingham v. Meighan, 55 Wis. 354, 13 N. W. 269; Fareira v. Gabell, 89 Pa. 89; North v. Phillips, 89 Pa. 250; Ruchizky v. De Haven, 97 Pa. 202; Dickson's Ex'r v. Thomas, 97 Pa. 278; Sampson v. Shaw, 101 Mass. 145, 3 Am. Rep. 327; Tenney v. Foote, 95 Ill. 99; Phelps v. Holderness, 56 Ark. 300, 19 S. W. 921.

Whether the business was illegal depends upon the fact as to whether it was conducted in violation of the Cotton Futures Act, as section 14 of that act, above quoted, makes it a crime punishable by fine and imprisonment for any person to violate any of its provisions. There is no pretense that the tax imposed by section 3 was paid. Section 5, however, provides that the tax need not be paid on any contract of sale, if the contract comply with the conditions named in said section. Assuming that the memorandums offered in evidence constituted the contract mentioned in the Cotton Futures Act, it appears that they contain this indorsement: "Subject to the United States Cotton Futures Act, Section 5." Under the law, this incorporated into the contract all of the provisions of section 5, except subdivisions first and second. The weight of the cotton not being mentioned, each bale was deemed under the law to weigh 500 pounds. The memorandums of purchase and sale offered in evidence were signed only by the brokers who sold the cotton and by the vendee who bought the same. This being so, counsel for defendant contends that the memorandums were not signed by the party to be charged or by his agent in his behalf. I see no merit in this contention, as the Cotton Futures Act does not make it necessary for the agent to say, when he signs the contract or memorandum, that he signed it in behalf of his principal, meaning him. To hold otherwise would be to abolish the law in regard to the acts of an agent for an undisclosed principal. The plaintiffs show they were the agents of the defendant, and acted as such in the purchase and sale of the cotton; and this either party could do, even in cases where the law requires the contract to be in writing (Briggs v. Partridge, 64 N. Y. 357, 21 Am. Rep. 617; Ford v. Williams, 21 How. 287, 16 L. Ed. 36); the only exceptions being instruments under seal and promissory notes (21 R. C. L. 891). The contention that the memorandums did not specify the time of delivery has no merit. The memorandums all bore dates in January and February, 1917, and specified May as the time of delivery. This could only mean May, 1917. The contention that the names and addresses of the seller and buyer are not mentioned is based upon the fact that the names and addresses of the brokers alone were mentioned. Under the rules of the Cotton Exchange, only members thereof may

buy or sell cotton on the Exchange. The brokers, so far as the Exchange is concerned, are the buyers and sellers.

Congress, in legislating as to the sale of cotton for future delivery on the Cotton Exchange, must have been familiar with the manner of transacting business thereon, and as to who are called sellers and buyers. It is claimed that the written memorandums are in violation of the regulations of the Treasury prescribed under the Cotton Futures Act in this: That the memorandums refer to the rules of the Cotton Exchange which permit verbal contracts, but to refer in a written contract to the provision in the rules mentioned would not violate the Treasury regulation if the verbal contract could not be substituted for the written one.

I am satisfied that, if the memorandums offered could be held to be the contracts referred to in the Cotton Futures Act, then they comply substantially with the provisions of section 5; but, conceding they do comply with the provisions of section 5, it still remains to be determined: Are they evidence of a contract? Are they, standing alone, evidence of a written contract? The difficult question in the case is: What did Congress mean by the following language found in section 4: "And shall be signed by the party to be charged, or by his agent in his behalf." An instrument in writing, not signed by both seller and buyer, would not constitute a contract in writing. It is provided by rule 47 of the New Orleans Cotton Exchange as follows:

"It shall be the duty of the seller, on the day on which transactions in contracts take place, or at not later than 9 a. m. on the following day, to furnish a contract or slip, and deliver his own already signed, and the opposite one in blank to the buyer; the latter shall then sign his contract, or slip, and return it to the seller."

Notice may be taken that this is the manner of doing business on the great exchanges of the country. Sometimes the instruments executed are called buyers' slips or sellers' slips; sometimes bought and sold notes. Nicol v. Ames, 173 U. S. 509, 19 Sup. Ct. 522, 43 L. Ed. 786. The language used by Congress, above quoted, would seem to be unfortunate, as Congress could not make an instrument signed by one party only a contract.

Some courts, in deciding questions under the statute of frauds, have decided that a party to a contract which the law required to be in writing, who did not sign the same, may enforce the contract against the party who did, and the language used by Congress might have come from this source; but, as the language, if literally interpreted, would be meaningless, because both the seller and the buyer are to be charged in any contract for the purchase or sale of cotton, I think it must be held that the language means that any party to the contract who is to be charged thereby must sign it, either himself or by his agent. Moreover, this is not a suit to charge either party to the contracts of purchase and sale.

Counsel for plaintiff at the trial offered oral evidence to show that Thorn & Maginnis signed contracts agreeing to purchase cotton from the brokers who signed the memorandums which were offered in evidence similar in all respects to the contracts offered, except that they

read "bought from," instead of "sold to," and that each of them contained the exact wording of ones offered with that exception, and were delivered to the brokers signing the memorandums offered: that these other brokers were all residents and citizens of the state of Louisiana, and that said instruments were in the state of Louisiana, and outside of the jurisdiction of the court. The trial court denied this offer, for the reason that the evidence offered was not the best evidence, and there had been no sufficient effort made to obtain the originals or copies thereof to allow the introduction of secondary evidence as to their contents. I think the court was right in this ruling. Burton v. Driggs, 20 Wall. 125, 22 L. Ed. 299, and Stebbins v. Duncan, 108 U. S. 32, 2 Sup. Ct. 313, 27 L. Ed. 641, decide nothing to the contrary. It is not clear whether any such offer was made with respect to the sale of the 2,000 bales of cotton. It is contended that, the present suit not being on the contracts, the evidence offered was collateral to the main issue, and therefore it was not necessary to produce the original contracts or copies. I cannot agree that the evidence was offered on a collateral issue. It stood without contradiction in the case that the tax provided by law on the purchase and sale of cotton at the New Orleans Cotton Exchange had not been paid. The purchase or sale without such payment was a crime under the Cotton Futures Act. The plaintiff participating in such offense could not recover for their disbursements and commissions unless they showed they complied with those provisions of the Cotton Futures Act, which would relieve them from the payment of the tax. It was consequently one of the important issues for the plaintiffs to meet. The law is that the agent must know that he is committing an illegal act, but in this instance the plaintiffs were bound to know the law, and, as they knew the facts, they must be held to have knowingly transacted the business. Whatever offense was committed, the plaintiffs were aiders and abettors therein, and under section 332 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1152 [Comp. St. § 10506]) were principals.

It thus appears on the face of the record that Browne or his agents, Thorn & Maginnis, did not sign the memorandums offered in evidence, and if there were buyer and seller slips signed and executed by Thorn & Maginnis in connection with the purchase and sale of the cotton in controversy, they have not been produced, and for all the purposes of this case, must be treated as not having been executed. With the case in this position, I am of the opinion that, so far as the present record is concerned, the Cotton Futures Act was violated in this: That no tax was paid as provided by law on the purchase and sale of the cotton on the New Orleans Cotton Exchange, nor has there been shown such a compliance with the Cotton Futures Act as would relieve the sellers from the payment of the tax. The transaction in regard to the purchase and sale of the stock was therefore illegal.

In such cases, the law will leave the parties where it finds them, not lending its aid to either. The plaintiffs therefore may not recover.